In the Interest of Regina GONZALEZ.

No. 04–97–00845–CV.

Court of Appeals of Texas, San Antonio.

March 10, 1999.

Rehearing Overruled May 5, 1999.

Richard R. Orsinger, San Antonio, for appellant.

Victoria Valerga, San Antonio, for appellee.

Before PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice and CATHERINE STONE, Justice.

PHIL HARDBERGER, Chief Justice.

This is the third appeal resulting from the dissolution of a personal and business relationship between Luisa Gonzalez and José Antonio O'Farrill Avila. *See In the Interest of Gonzalez*, 981 S.W.2d 313 (Tex. App.—San Antonio 1998, pet. filed); *O'Farrill v. Gonzalez*, 974 S.W.2d 237 (Tex.App.—San Antonio, 1998, pet. denied). In a prior appeal, we considered issues relating to the business relationship. *See O'Farrill.* In this appeal, we consider the product of the personal relationship—a daughter named Regina. O'Farrill raises twenty-three issues attacking orders denying his special appearance, establishing his paternity, and awarding child support and attorney fees. We affirm as modified in part and reverse and remand in part.

## PERSONAL JURISDICTION

O'Farrill, Gonzalez, and Regina are all Mexican citizens. Gonzalez and Regina currently live in San Antonio, Texas, and O'Farrill lives in Mexico. In his first five issues, O'Farrill argues there is no basis consistent with due process for Texas courts to exercise jurisdiction over him.

For a Texas court to exercise jurisdiction over a nonresident defendant, a Texas statute must authorize the exercise of jurisdiction and the exercise of jurisdiction must be consistent with due process. *See In re S.A.V.*, 837 S.W.2d 80, 85 (Tex.1992). It is undisputed that personal service was effected on O'Farrill when his plane touched down in Texas to refuel while en route to Colorado from Mexico. The Family Code provides that a court may exercise jurisdiction over a nonresident if he was personally served in this

state. *See* Tex. Fam.Code Ann. § 102.011(b)(1) (Vernon Supp.1998). Section 102.011(b)(1) thus authorizes Texas courts to exercise jurisdiction over O'Farrill. The United States Supreme Court's decision in *Burnham v. Superior Court*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), indicates that in-state personal service is also consistent with due process.

In *Burnham*, a New Jersey defendant was personally served with a divorce petition in California while he was in that state to conduct business and visit his children. Justice Scalia, writing for a plurality of four, determined that "jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'" 495 U.S. at 619, 110 S.Ct. 2105. Three other justices joined in a concurring opinion filed by Justice Brennan. In their view, tradition alone was not dispositive; they would judge the constitutionality of in-state service on a nonresident by examining contemporary notions of due process. *See id.* at 629–32, 110 S.Ct. 2105 (Brennan, J., concurring). Ultimately, though, even these justices concluded that "as a rule the exercise of personal jurisdiction over a defendant based on his voluntary presence in the forum will satisfy the requirements of due process." *Id.* at 639, 110 S.Ct. 2105. They reasoned that by visiting the forum state, a defendant avails himself of significant benefits, such as the protection of his health and safety. *See id.* at 637–38, 110 S.Ct. 2105. Justice Stevens joined neither Justice Scalia's nor Justice Brennan's opinion, but concurred in the judgment based on considerations of history, fairness, and common sense. *See id.* at 640, 110 S.Ct. 2105 (Stevens, J., concurring).

The members of the *Burnham* Court unanimously agreed that in-state service on the nonresident was sufficient to satisfy due process, but they disagreed on the reasoning to support that result. Lower courts should therefore apply the *Burn-ham* result to substantially identical cases. *See* Linda Novak, Note, *The Precedential Value of Supreme Court Plurality Opinions*, 80 Colum. L.Rev. 756, 779 (1987); *see also Flores v. Melo–Palacios*, 921 S.W.2d 399, 402–03 (Tex.App.—Corpus Christi 1996, writ denied) (following *Burnham*); *Sarieddine v. Moussa*, 820 S.W.2d 837, 840 (Tex.App.—Dallas 1991, writ denied) (following *Burnham*). *But see Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 413 (Tex.App.—Houston [14th Dist.] 1997, no writ) (noting that because *Burnham* was a plurality opinion, it does not constitute binding authority). Because O'Farrill, like the defendant in *Burnham*, received personal service while temporarily in the forum state, our state's courts may exercise jurisdiction over him pursuant to *Burnham*.

O'Farrill suggests that we should not rely on *Burnham* for two reasons. First, the Fifth Circuit has refused to apply *Burnham* to uphold jurisdiction over a nonresident corporation even though in-state service was obtained. *See Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182–83 (5th Cir.1992). *Siemer* is distinguishable from this case and *Burnham* because it involved a corporation rather than an individual. *See id.* As the *Siemer* Court noted, *Burnham* does not apply to corporations. *See id.*

Second, unlike the defendant in *Burnham*, O'Farrill is a foreign citizen. O'Farrill argues that because both the Scalia and Brennan opinions relied to some extent on American tradition, in-state personal service is not sufficient to allow Texas courts to exercise jurisdiction over a foreign national. We find nothing in either opinion purporting to limit the *Burnham* holding to American citizens. *Cf. Kadic v. Karadzic*, 70 F.3d 232, 247 (2d Cir.1995) (noting, in reliance on *Burnham*, that personal service in New York on president of Bosnian–Serb republic comported with the requirements of due process for the assertion of personal jurisdiction).

■ Even if *Burnham* did not apply, the denial of the special appearance could be upheld pursuant to the usual test applied to establish jurisdiction over a non-resident defendant. Under that well-known test, Texas courts have jurisdiction if: (1) the defendant purposely established minimum contacts with this state and (2) the exercise of jurisdiction comports with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In reviewing the application of this test, we consider all the evidence in the record, including the evidence admitted at trial. *See Vosko v. Chase Manhattan Bank*, 909 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1995, writ denied).

■ Although O'Farrill was served during a brief refueling stop, the record reveals that he had other significant, purposeful, and direct contacts with Texas related to this suit. Gonzalez testified that Regina was conceived around Christmastime in 1993, while she and O'Farrill were staying in San Antonio. In January 1994, they formed a Texas corporation called "Inwood House," which purchased a house in the Inwood community of San Antonio. Each of them personally guaranteed the mortgage on the house. A friend of Gonzalez testified that in February 1994, Gonzalez and O'Farrill told him they were going to have a child and they planned to make their home in San Antonio. According to Gonzalez, she, O'Farrill, and Regina lived together periodically at the Inwood house until May 1995. Through these contacts, O'Farrill availed himself of the benefits and protections of Texas law and could reasonably expect to litigate matters related to his daughter's support in this state. *See Burger King*, 471 U.S. at 474–75, 105 S.Ct. 2174.

■ O'Farrill exhorts us to hold that jurisdiction is lacking because of the onerous burden he would have faced in defending this suit in a foreign legal system. We recognize that we must consider the unique burdens encountered by foreign cit-izens called upon to defend themselves in our courts. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). But the mere fact that the defendant is a foreign citizen does not destroy jurisdiction. *See id.* The record in this case demonstrates that O'Farrill has had significant business and personal involvement with this country's legal system, including establishing a Texas export corporation and purchasing a home in Colorado. O'Farrill presented no evidence to show that traveling to Texas is difficult for him, and the record shows that he owns his own plane and has been here frequently. Considering these facts, the trial court was justified in concluding that the burden on O'Farrill was not particularly onerous. O'Farrill also emphasizes that Gonzalez and Regina are Mexican citizens. Because both of them live here, however, Texas has an interest in adjudicating this dispute. We conclude that exercising jurisdiction over O'Farrill comports with fair play and substantial justice.

■ Finally, O'Farrill argues that we may not uphold personal jurisdiction based on *Burnham* or the minimum contacts analysis because Gonzalez did not plead these jurisdictional grounds; she only alleged that O'Farrill was a Texas resident. At a special appearance hearing, the defendant bears the burden of negating all bases for jurisdiction. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex.1982). But when the plaintiff fails to allege that the defendant performed any specific acts in Texas, the defendant's evidence that he is a nonresident is sufficient to negate jurisdiction. *See id.; Vosko*, 909 S.W.2d at 99.· O'Farrill asserts that he established at the special appearance hearing that he is a resident of Mexico, and that he therefore negated personal jurisdiction under *Siskind.* O'Farrill did not make this argument at the special appearance hearing. In fact, O'Farrill's attorney conceded that the court "may assert jurisdiction" over O'Farrill because he was personally served in Texas, but urged

the court to use its discretion to decline to exercise jurisdiction. The attorney also argued that the minimum contacts test had not been satisfied. Jurisdiction based on *Burnham* and minimum contacts was thus tried by consent. *See* TEX.R. CIV. P. 67; *Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 673–74 (Tex.App.— Dallas 1993, writ dism'd by agr.).

We overrule issues one through five and uphold the exercise of jurisdiction over O'Farrill.

### THE ORDER ON PRE-TRIAL CONFERENCE

After denying the special appearance, the trial court ordered O'Farrill to submit to a blood test, and a pre-trial conference on the issue of paternity was scheduled. O'Farrill failed to appear for the blood test or for the pre-trial conference. At the pre-trial conference, O'Farrill's attorney indicated that O'Farrill had no intention of ever submitting to a blood test. Based on this representation and Gonzalez's testimony, the court ruled that O'Farrill is Regina's father. *See* TEX. FAM.CODE ANN. § 160.107(a)(2) (Vernon 1996) (if a party refuses to submit to court-ordered parentage testing, on proof sufficient to render a default judgment the court may resolve the question of parentage against that party). O'Farrill does not contest this determination on appeal.

Gonzalez also testified regarding her request for temporary child support and her attorney testified regarding interim attorney fees. The trial court signed an "Order on Pre-Trial Conference," finding O'Farrill's net monthly resources to be in excess of $50,000 and Gonzalez's net monthly resources to be $2,500, setting temporary child support at $6,050 per month, and ordering O'Farrill to pay $15,000 in attorney fees and $43,039 in retroactive support, which covered the period between the filing of the petition and the signing of the order. Issues 6 through 9 in O'Farrill's brief concern this order.

## A. Retroactive Child Support

In Issue 6, O'Farrill argues that the trial court was not authorized to award retroactive support. The Family Code permits a trial court to order temporary child support in a parentage case before a final determination of parentage is made. *See* TEX. FAM.CODE ANN. § 160.004 (Vernon 1996). O'Farrill correctly observes that section 160.004 says nothing about awarding retroactive support.

Section 160.005 provides that a court may order retroactive support upon "a finding of parentage." *Id.* § 160.005(b). After Gonzalez testified regarding paternity, the court orally found by clear and convincing evidence that O'Farrill is Regina's father. At a subsequent hearing concerning the Order on Pre-Trial Conference, the court stated that "a final ruling on paternity" had already been made. O'Farrill's counsel responded, "We presume that's what the Court intended to do." At a still-later hearing, O'Farrill's counsel noted that "as far as we're concerned, . . . the issue of paternity is a final order." Because the trial court clearly made a final determination of parentage at the pre-trial conference, it was authorized to award retroactive support. *See id.; see also Goheen v. Koester*, 794 S.W.2d 830, 834–35 (Tex.App.—Dallas 1990, writ denied) (interpreting prior version of statute to permit a temporary order to include an award of support retroactive to the date of filing the suit). We overrule Issue 6.

## B. Factfindings

When the trial court determines that an obligor's net monthly resources exceed $6000, the court must presumptively apply the child support guidelines to the first $6000 of resources. *See* TEX. FAM. CODE ANN. § 154.126(a) (Vernon 1996). If the court orders additional child support beyond the presumptive amount, the court must make a written finding regarding the specific reasons for deviating from the guidelines. *See id.* § 154.130.

The court determined that the amount of child support that would be awarded if the percentage guidelines were applied to the first $6000 of O'Farrill's net resources is $960. The court then listed the following reasons for deviating from the presumptive award: best interest of the child; age and needs of the child; financial resources available for the support of the child; benefits furnished to O'Farrill by his employer and family; the child's special and extraordinary expenses (for example, a bodyguard); and positive cash flow from O'Farrill's assets, business, and investments.

In Issue 7, O'Farrill complains that the reasons given for deviating from the presumptive amount are not sufficiently specific. The purposes of the factfinding requirement are to assist the obligor in challenging the trial court's order and to enable the appellate court to conduct a meaningful review. *See Tenery v. Tenery,* 932 S.W.2d 29, 30 (Tex.1996); *In re Marriage of Combs,* 958 S.W.2d 848, 851 (Tex. App.—Amarillo 1997, no pet.). The reasons listed in the Order on Pre–Trial Conference are sufficient to reveal whether the trial court based the deviation on any improper factors. They are also sufficient to inform O'Farrill where to direct his evidentiary challenges. The reasons stated by the trial court were adequate to satisfy the statute. We overrule Issue 7.

## C. Amount of Child Support

In Issues 8 and 9, O'Farrill argues that the trial court abused its discretion in determining the amount of temporary and retroactive child support. He challenges the court's findings regarding his and Gonzalez's net monthly resources and argues that Regina's true needs are less than the amount claimed by Gonzalez.

■■■■■ We review a child support award for abuse of discretion. *See Zajac v. Penkava,* 924 S.W.2d 405, 408 (Tex. App.—San Antonio 1996, no writ). Abuse of discretion does not exist when there is some evidence of a substantive and proba-

tive character to support the award. *See id.* We do not treat allegations of legal and factual insufficiency as independent grounds of error. *See id.*

■■■ Gonzalez was awarded $6050 in retroactive and temporary child support in the Order on Pre–Trial Conference. Approximately one year later, the court made a final child support award of $6300. For the reasons explained in our discussion below of Issues 16 and 17, the trial court did not abuse its discretion in making the $6300 award. This holding effectively moots O'Farrill's arguments regarding the $6050 award because if this award had not been made in the Order on Pre–Trial Conference, the court could have simply ordered retroactive support when the final judgment was rendered. *See* TEX. FAM. CODE ANN. §§ 154.009, 160.005(b) (Vernon 1996). Nevertheless, we will briefly address O'Farrill's arguments.

At the pre-trial conference, Gonzalez did not produce direct evidence of O'Farrill's income, relying instead on inferences from evidence regarding the amount of support he had provided in the past, his ownership of and high-ranking positions at several Mexican and American companies, and his ownership of expensive houses, a jet, and a boat. But Gonzalez testified at the final hearing, based on O'Farrill's tax returns, that he earned $48,015 per month. She also testified that this amount did not include interest income. O'Farrill does not argue that the evidence at the final hearing is insufficient to establish that his net resources are more than $48,000 a month.

Regarding her own resources, Gonzalez testified that her visa status did not allow her to work in this country, and she was taking one college class. Before she met O'Farrill she had earned $6000 to $10,000 a month under the then-current exchange rates. Under present exchange rates, the amount would be approximately $2000.

Regarding Regina's needs, O'Farrill challenges the same expenses in connection with temporary and retroactive sup-

port as he challenges in connection with the final award. *See infra* at 18–19. He also suggests that other expenses were inflated or relate more to Gonzalez's lifestyle than to Regina's needs. Gonzalez's testimony supports a finding that most of these expenses were attributable to Regina's needs, and the court, unlike O'Farrill, apparently found her to be a credible witness. We also note that the amount awarded by the trial court is less than the amount of expenses claimed by Gonzalez. The court did not abuse its discretion in setting retroactive and temporary support at $6050, and we overrule Issues 8 and 9 insofar as they challenge these awards.

## D. Attorney Fees

 O'Farrill also argues in Issues 8 and 9 that the attorney fee award must be reversed because Gonzalez's attorney did not segregate the amount of time spent on the issues in this case and the amount spent on the related breach of contract case. Because O'Farrill did not raise this issue in a post-judgment motion, the issue is waived. *See O'Farrill*, at 249 & n. 5. O'Farrill also abandoned this issue at the pre-trial conference. His attorney asked Gonzalez's attorney on cross-examination if she could state how much time was spent on this matter as opposed to the contract matter. The attorney responded that she would need to refer to her billing records to answer the question, and the court ordered her to provide the billing records. When the attorney provided the billing records, the court asked O'Farrill's attorney whether he desired to conduct any further cross-examination. The attorney responded, "I think my going through and cross-examining her and trying to figure out how much time was spent for this, that, and the other, will be extremely time

consuming and the Court can look at it and get a good idea." He also stated, "I think the Court can review the statements and make an adequate determination of what is reasonable and necessary." We overrule Issues 8 and 9 insofar as they challenge the attorney fee award.

## THE ORDER GRANTING JUDGMENT FOR CHILD SUPPORT ARREARAGE

O'Farrill failed to make the payments required by the Order on Pre–Trial Conference, and Gonzalez filed a motion for enforcement. O'Farrill did not appear at the hearing, but was represented by his attorney. The court signed an order reducing the arrearages, along with the unpaid attorney fees, to a judgment of $64,089, plus pre- and post-judgment interest at the rate of 12%. The order also directed O'Farrill to deposit $100,000 with the court as a bond, conditioned on his payment of the child support. Issues 10, 11, and 12 concern this order.

 In Issues 10 and 11, O'Farrill argues that interlocutory child support and attorney fee awards should not be enforceable by execution, that interest cannot accrue on the awards, and that the interest rate on the attorney fees should be 10% rather than 12%.[2]

In a suit to establish the parent-child relationship and obtain child support, the trial court may make temporary orders for child support and attorney fees. *See* TEX. FAM.CODE ANN. §§ 101.031, 101.032, 105.001(a)(2),(5) (Vernon 1996). The violation of a temporary order is punishable by contempt and the order is subject to and enforceable under Chapter 157 of the Family Code. *See id.* § 105.001(f).

---

**2.** In the final judgment, the court ordered that all obligations for temporary child support imposed by temporary orders that were not yet discharged shall survive the judgment, and independent enforcement of those obligations may be sought. O'Farrill suggests in Issue 10 that the trial court erred in providing that the temporary orders survive the final

judgment. We reject this suggestion. A final judgment does not nullify an award for temporary child support that is still due at the time of the judgment. *See Coke v. Coke*, 802 S.W.2d 270, 273 (Tex.App.—Dallas 1990, writ denied); *Ex parte Shaver*, 597 S.W.2d 498, 500 (Tex.Civ.App.—Dallas 1980, orig. proceeding).

Chapter 157 allows a trial court to render a cumulative money judgment for arrearages of child support and of the attorney fees awarded in enforcing the child-support obligation. *See id.* § 157.263; *In re Clark,* 977 S.W.2d 152, 157 (Tex.App.—Houston [14th Dist.] 1998, orig. proceeding); *Ex parte Wagner,* 905 S.W.2d 799, 803 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding). Such a judgment may be enforced by any means available for the enforcement of a judgment for debts. *See* Tex. Fam.Code Ann. § 157.264. Interest accrues on delinquent child support at the rate of 12% simple interest per year from the date the support is delinquent. *See id.* § 157.265(a). Accrued interest is part of the child support obligation and may be enforced by any means provided for the collection of child support. *See id.* § 157.267. Pursuant to these statutes, the trial court was authorized to reduce O'Farrill's arrearages to a judgment enforceable by execution, to order that interest accrue on the child support and attorney fee awards, and to apply a 12% interest rate to the delinquent child support. Gonzalez agrees that interest on the attorney fee award should accrue at a rate of only 10%. Therefore, we will modify the order to provide for 10% interest on the attorney fee award. In all other respects, we overrule Issues 10 and 11.

In Issue 12, O'Farrill argues that the trial court abused its discretion by ordering him to file the $100,000 bond. Section 157.109 allows a court to require a child support obligor to execute a bond if the court finds that the obligor is employed by an employer not subject to the jurisdiction of the court or that income withholding is unworkable or inappropriate. *See id.* § 157.109(a)(2). O'Farrill notes that no evidence was presented at the hearing resulting in this order and the order does not contain an express finding tracking the statutory language. By its terms, the statute does not require the court to make a written finding. Although no new evidence was presented at the

hearing, the court had already heard evidence at the pre-trial conference that O'Farrill is a citizen and resident of Mexico, that he is employed by Mexican companies owned by himself and his family, and that his salary does not include all the monetary benefits he receives from the companies. Considering this evidence, the trial court acted within its discretion in ordering the bond. We overrule Issue 12.

## THE ORDER FOR CAPIAS

Gonzalez eventually obtained personal service of a motion for contempt on O'Farrill, but O'Farrill nevertheless failed to appear at the contempt hearing. When an obligor who has been personally served fails to appear, the court may not hold the obligor in contempt, but may issue a capias for his arrest. *See* Tex. Fam.Code Ann. § 157.066 (Vernon 1996). Pursuant to this statute, the court issued a capias for O'Farrill's arrest. The court ordered that O'Farrill could post a bond of $76,000, subject to forfeiture if he failed to appear for the hearing on the court date following his release from custody. The court also awarded Gonzalez $750 in attorney fees for bringing the motion for contempt.

Issue 13 concerns the Order for Capias. O'Farrill argues that article I, section 18 of the Texas Constitution, which forbids imprisonment for debt, prohibits holding him in contempt for failure to pay the child support and attorney fee arrearages. He also argues that the court erred in setting the $76,000 bond.

Decisions in contempt proceedings are not appealable. *See Metzger v. Sebek,* 892 S.W.2d 20, 54 (Tex.App.—Houston [1st Dist.] 1994, writ denied). This is so even when the contempt order is being appealed along with a judgment that is appealable. *See id.; Gensco, Inc. v. Thomas,* 609 S.W.2d 650, 651 (Tex.Civ. App.—San Antonio 1980, no writ). A habeas petition is the proper way to challenge a contempt order on the ground that it violates the constitutional prohibition against imprisonment for debt. *See Ex*

*parte Wagner*, 905 S.W.2d at 802. A capias is a sufficient restraint of liberty to permit filing a petition for writ of habeas corpus. *See In re Clark*, 984 S.W.2d 644, 644–45, (Tex.App.—Houston [14th Dist.] 1998, orig. proceeding); *Ex parte Rosser*, 899 S.W.2d 382, 385 n. 6 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding). We therefore conclude that we do not have jurisdiction over Issue 13.

■■■ Even were we to conclude that we had jurisdiction, we would not find O'Farrill's arguments convincing. It is well-settled that a parent may be held in contempt and imprisoned for failure to pay child support because the parent's obligation to support his child is not a debt, but a natural and legal duty. *See Ex parte Hall*, 854 S.W.2d 656, 658 (Tex.1993); *Ex parte Birkhead*, 127 Tex. 556, 95 S.W.2d 953, 954 (1936); *Ex parte Wagner*, 905 S.W.2d at 802. O'Farrill nevertheless asserts that the remedy of contempt is not available to Gonzalez because she chose to have the child support arrearages reduced to a judgment that is enforceable as a debt. *See Ex parte Harwell*, 538 S.W.2d 667, 670–71 (Tex.Civ.App.—Waco 1976, orig. proceeding). The supreme court has made clear, however, that the child support obligation does not become a debt merely because arrearages have been reduced to a judgment that is enforceable in the same way as a judgment for a debt. *See Smith v. Bramhall*, 563 S.W.2d 238, 239 (Tex.1978); *Ex parte Wilbanks*, 722 S.W.2d 221, 224 (Tex.App.—Amarillo 1986, orig. proceeding); *Ex parte Shaver*, 597 S.W.2d 498, 500–01 (Tex.Civ.App.—Dallas 1980, orig. proceeding). We disagree with *Ex parte Harwell* to the extent it holds otherwise.

■■■ The law views attorney fees incurred in a suit to establish paternity and to enforce the father's child support obligation as part of the child support obligation. *See Ex parte Helms*, 152 Tex. 480, 259 S.W.2d 184, 188 (1953); *Ex parte Wagner*, 905 S.W.2d at 803. Therefore, a parent may be held in contempt for failing to pay such attorney fees. *See Ex parte Wagner*, 905 S.W.2d at 803.

■■■ O'Farrill's argument regarding bond is also unconvincing. He argues that the trial court should not have ordered a bond in the amount of $76,000, because it had already ordered a $100,000 bond. The $100,000 bond served a different purpose from the $76,000 bond. The $100,000 bond was conditioned on O'Farrill's payment of arrearages; the $76,000 bond was conditioned on his appearance before the court to answer the motion for contempt.

## THE FINAL DECREE

After a bench trial, which O'Farrill did not attend, the court signed a "Final Decree in Suit Affecting the Parent Child Relationship." The court found that O'Farrill's net monthly resources are in excess of $48,000, and that Gonzalez's net monthly resources are $2500. Child support was set at $6300 a month, to be paid in a lump-sum of $1 million to a trust to be established at Frost National Bank. The court also awarded Gonzalez $23,000 in attorney fees. Issues 14 through 17 concern the Final Decree.

### A. Factfindings

The Final Decree recites that the court deviated from the presumptive amount of $960 because of the best interest of the child, the age and needs of the child, the ability of the parents to contribute to the support of the child, the amount of time of possession of and access to the child, the financial resources available for the support of the child, the benefits furnished to O'Farrill by his employers, the special and extraordinary expenses of the child, and the positive cash flow from O'Farrill's assets, business, and investments. The court also found that Regina's monthly needs "exceed $6300." Pursuant to Texas Rule of Civil Procedure 296, O'Farrill requested that the court prepare an additional finding regarding the exact amount of Regi-

na's monthly needs. The court did not make the requested finding.

 In Issue 14, O'Farrill argues that the reasons given for deviating from the presumptive amount are not sufficiently specific. This is the same argument we have already considered and rejected in our discussion of Issue 7. We overrule Issue 14.[3]

In Issue 15, O'Farrill argues that the trial court erred by refusing to state the exact amount of Regina's proven needs. We abated the appeal and ordered the trial court to make a finding on this issue. *See* Tex.R. Civ. P. 296; Tex.R.App. P. 44.4; *Tenery*, 932 S.W.2d at 30. In compliance with our order, the trial court made a finding that Regina's monthly needs are $7733.

## B. Amount of Child Support

### 1. O'Farrill's Net Resources

Gonzalez testified, based on O'Farrill's tax returns, that he earned $48,015 per month. She also testified that this amount did not include interest income. This testimony supports the trial court's finding that O'Farrill's net monthly resources exceed $48,000, and O'Farrill does not argue otherwise on appeal.

### 2. Gonzalez's Net Resources

 O'Farrill argues the trial court's finding that Gonzalez's monthly net resources are $2500 is not supported by the evidence. Gonzalez has a business degree, with post-graduate studies in finance and marketing. Her most recent job was with a company controlled by O'Farrill. She was fired from that job when their personal relationship ended. She stated that she has now started to look for work in San Antonio, and that her family is providing her financial assistance. In the late 1980s, she worked at a Mexican bank making $10,000 a month at the then-current exchange rates. She testified that under today's exchange rates, the amount would be closer to $2000 a month. Considering this evidence, the trial court did not abuse its discretion in assigning the $2500 amount as Gonzalez's net monthly resources.

### 3. Regina's Needs

As noted above, when the trial court determines that an obligor's net monthly resources exceed $6000, the court must presumptively apply the child support guidelines to the first $6000 of resources. *See* Tex. Fam.Code Ann. § 154.126(a) (Vernon 1996). The court may order additional child support beyond this presumptive amount, based on the income of the parties and the proven needs of the child. *See id.* To calculate a proper additional amount, the entire amount of the presumptive award must be subtracted from the proven total needs of the child. The court must then allocate between the parties the responsibility to meet the child's additional needs, "according to the circumstances of the parties." *Id.* § 154.126(b). In no event may an obligor be required to pay more child support than the greater of the presumptive amount or the amount equal to 100% of the proven "needs of the child." *Id.*

 "Needs of the child" is not defined by the statute, nor has the supreme court provided a comprehensive definition. The court has only held that the term "needs" includes more than bare necessities, but is not to be determined based on the lifestyle of the family. *See Rodriguez v. Rodriguez*, 860 S.W.2d 414, 418 n. 3. The manag-

---

3. Although not raised by O'Farrill, we realize that one of the reasons given by the trial court, "amount of time of possession and access to the child," is not an appropriate reason for awarding more than the presumptive amount. *See Scott v. Younts*, 926 S.W.2d 415, 420 (Tex.App.—Corpus Christi 1996, writ denied). When the obligor has more than $6000 in net monthly resources, the court may only consider the needs of the child and the financial ability of the parents in deciding to award more than the presumptive amount. *See id.* The recitation of an improper factor does not require reversal if the decree can be upheld by considering only the proper factors. *See id.*

ing conservator is in the best position to explain the child's needs, and expert testimony is generally not required. *See Scott,* 926 S.W.2d at 421. The trial court, as sole judge of the credibility of witnesses, may choose whether to believe or disbelieve the managing conservator. *See id.* In this case, Gonzalez's testimony is the only evidence regarding Regina's needs; O'Farrill did not present any testimony.

■ O'Farrill argues that the trial court abused its discretion in determining Regina's needs. In particular, he asserts that ten of the "needs" claimed by Gonzalez are either improper to consider or inflated in amount. These items are expenses for a bodyguard, nanny, maid, groceries, telephone, car, country club membership, finance charges, clothing, and college savings.

O'Farrill argues that a bodyguard is not a necessity. for Regina because Gonzalez lives in a gated subdivision with a guard. The evidence establishes that the O'Farrill family, including another daughter of O'Farrill and O'Farrill himself, have been subjected to kidnaping attempts and that O'Farrill's other children have bodyguards. Indeed, O'Farrill's attorney argued that O'Farrill did not attend one of the hearings in this case because he was afraid to travel. It was within the trial court's discretion to determine that Regina needed a bodyguard.

O'Farrill also argues that Regina does not need a nanny. Gonzalez testified that she needs the nanny because she has spent a lot of time away from the house pursuing her cases against O'Farrill. She also testified that she is looking for a job. The trial court could properly have concluded that these are legitimate reasons for needing child care in the past and in the future.

The remaining "needs" challenged by O'Farrill total $3416. Accepting O'Farrill's challenges to these needs and deducting this amount from the $10,669 in needs claimed by Gonzalez leaves $7253, which is obviously more than the $6300 awarded as child support. Because $6300 is less than 100% of Regina's proven needs and is within the calculations required by the Family Code, we cannot say the court abused its discretion. *See Scott,* 926 S.W.2d at 422. We overrule Issues 16 and 17 insofar as they challenge the award of $6300 in child support.

**C. Lump–Sum Award**

■ In Issues 16 and 17, O'Farrill also challenges the lump-sum amount awarded by the trial court. The court ordered O'Farrill to make a one-time lump-sum payment of $1 million, which will be paid into the Regina O'Farrill Gonzalez Trust at Frost National Bank. The Trust shall disburse $6300 a month to Luisa Gonzalez as child support until Regina reaches majority. The remainder is to be distributed to O'Farrill. O'Farrill argues that the evidence is insufficient to support the $1 million amount because Gonzalez failed to introduce any evidence regarding the proper discount rate. It appears that the trial court arrived at the $1 million amount by simply multiplying $6300 by the number of months until Regina reaches majority.

■ In Texas, specific evidence of the discount rate is not required. *See Missouri Pac. R.R. v. Kimbrell,* 160 Tex. 542, 334 S.W.2d 283, 286 (1960); *Taylor Publ'g Co. v. Systems Mktg. Inc.,* 686 S.W.2d 213, 217 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Therefore, Gonzalez's failure to introduce such evidence does not render the evidence legally insufficient. But we agree with O'Farrill that a discount rate must be applied to arrive at the present value of the future payments of $6300. *See Sheshunoff & Co. v. Scholl,* 564 S.W.2d 697, 698 (Tex.1978). We will remand to the trial court for the limited purpose of determining the proper discount rate and performing the present value calculations.

**D. Terms of the Trust**

■ In Issue 18, O'Farrill asserts the trial court abused its discretion in requiring him to pay the lump-sum child support

into the Trust. The Trust is under the ultimate control of the trial court. O'Farrill complains that the bank is not required to give bond, is allowed to pay itself a fee, has all the powers conferred on trustees by the Trust Code, has the power to use trust funds to purchase securities or other property, has the authority to make binding decisions on distributions, has authority to allocate between income and principal, and is authorized to pay taxes and assessments on the property and income of the trust. O'Farrill asserts that the trial court improperly delegated its judicial authority by giving the bank these extensive powers.

■ The judicial power encompasses the authority to hear evidence, resolve issues of fact, decide questions of law, enter judgment in accordance with the facts and law, and enforce those judgments once entered. *See Tabor v. Hogan*, 955 S.W.2d 894, 897 (Tex.App.—Amarillo 1997, no pet.). The trial court exercised all these powers in this case. Contrary to O'Farrill's argument, the court did not cede to the bank its adjudicatory power; it only gave the bank the typical authority exercised by a trustee. As Gonzalez notes, the Trust was designed to protect O'Farrill and Regina by placing the money with a neutral party, rather than with Gonzalez. We overrule this portion of Issue 18.

**E. Medical Expenses**

■ The Final Decree requires Gonzalez to maintain health insurance for Regina, but O'Farrill is responsible for uninsured medical expenses. The decree states that "reasonableness of the charges for medical expenses shall be presumed on presentation of the bill to a party and ... disallowance of the bill by a health insurer shall not excuse that party's obligation to make payment or reimbursement as otherwise provided herein." Under Issue 18, O'Farrill argues that this provision is an attempt to alter the burden of proof in a future court proceeding. We do not construe this provision as an attempt to alter

the burden of proof. It simply clarifies O'Farrill's obligation to cover uninsured expenses and sets forth the event that triggers his obligation to pay. We overrule this portion of Issue 18.

**F. Change of Name**

■ O'Farrill also argues under Issue 18 that the trial court was not authorized to change Regina's name to include "O'Farrill" because she is a Mexican citizen. No authority is cited for this argument. The effect of a final judgment in a paternity case is to establish a parent-child relationship "for all purposes." Tex. Fam. Code Ann. § 160.006(b) (Vernon 1996). If paternity is established, the judgment must state the name of the child. *See id.* § 160.006(c). It is undisputed that the trial court had jurisdiction over the subject matter of this paternity suit. The court had jurisdiction over the parties as well. The court therefore had authority to change Regina's name under section 160.006. We overrule this portion of Issue 18.

**G. Attorney Fees**

■ In Issues 19 through 21, O'Farrill challenges the attorney fee award in the Final Decree. He argues in Issue 19 that the court failed to afford him a credit for the $750 in attorney fees already awarded in the Order for Capias. Because O'Farrill neither objected to including this amount at the hearing, nor raised the issue in his post-judgment motions, any error is waived. *See Holland v. Hayden*, 901 S.W.2d 763, 765 (Tex.App.—Houston [14th Dist.] 1995, writ denied).

■ In Issue 20, O'Farrill argues that the trial court erred by ordering that interest on all appellate attorney fees will run from the date this appeal was perfected. He argues that interest should begin to run on the date each appeal is unsuccessful. We have previously held that interest on appellate fees should run from the date each appeal is perfected. *See*

*O'Farrill,* at 250. In Issue 21, O'Farrill requests that we remand the question of attorney fees if we reverse the trial court's other rulings. Because we have sustained O'Farrill's argument regarding the application of a discount rate to the lump-sum award, we will allow the trial court to reconsider the amount of trial and appellate attorney fees on remand. In awarding appellate attorney fees, the trial court shall provide that interest will run from the date each appeal is perfected.

### THE TEMPORARY ORDER PENDING APPEAL

After O'Farrill perfected this appeal, Gonzalez moved for an award of child support pending appeal. The trial court granted the motion and awarded $6300 per month. In Issues 22 and 23, O'Farrill argues the trial court abused its discretion by making this award. A trial court may issue temporary orders, including an order for temporary child support, pending appeal. *See* TEX. FAM.CODE ANN. § 109.001(a)(2) (Vernon 1996). Such orders are not subject to interlocutory appeal. *See id.* § 109.001(c). Mandamus is the appropriate remedy to attack such an order. *See Johnson v. Johnson,* 948 S.W.2d 835, 838 (Tex.App.—San Antonio 1997, writ denied). Therefore, we need not address Issues 22 and 23. *See id.*

### CONCLUSION

For the reasons stated herein, the Order Granting Judgment for Child Support Arrearage is modified to provide for 10% interest on the attorney fee award, and the Final Decree is reversed insofar as it sets the lump-sum amount of child support at $1 million. The cause is remanded for the trial court to determine the amount of the lump-sum award by applying an appropriate discount rate and to reconsider the issue of trial and appellate attorney fees. In all other respects, the orders and judgment of the trial court are affirmed.