

# NUMBER 13-05-00429-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**WESLEY WARD WARREN,**                                                                 **Appellant,**

**v.**

**DIANNE L. WARREN,**                                                                          **Appellee.**

---

## On appeal from the 148th District Court of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

After a bench trial, the trial court rendered and signed a decree of divorce. Through two issues and various sub-issues, appellant, Wesley Ward Warren ("Wesley"), appeals the trial court's division of property and award of child support. We affirm in part, reverse in part, and remand.

### I. BACKGROUND

Wesley and his former wife, Dianne Elizabeth Warren ("Dianne"), were married for

23 years before being divorced on March 8, 2005. Two children were born to their marriage, one son, C.W., and a daughter, K.W., who at the time of the decree were 15 and 16 years old, respectively.

The record shows that approximately two years prior to their divorce, Wesley accepted employment with the Newpark Drilling Fluids Corporation ("Newpark"). In accepting the position as Senior Operations Advisor, he received a $20,000 sign-on bonus, 12,000 shares of Newpark stock, a $1,000 car allowance, a country club membership, use of an automobile, and a hunting lease. At the time of divorce, Wesley had an annual income of approximately $130,000, was scheduled to receive $62,000[1] in "additional compensation," and benefitted from incentive bonuses.

Dianne is a 18-year civil service employee. At the time of the divorce she was employed by the Corpus Christi Army Depot, had a degree in industrial engineering, and earned approximately $70,000 a year. Dianne testified that as far as her earning potential is concerned, she has reached the highest grade possible for her position; therefore, her future earning potential is limited.

The marital estate in this case is quite substantial. It consists of various stocks, mutual funds, CD's, IRA's, checking accounts, retirement accounts, life insurance policies, vehicles, and real property. In its findings, the trial court valued the community property at $1,784,181.18, of which $1,168,621.52 was awarded to Dianne, roughly 65%, and $615,559.66, or 35%, was awarded to Wesley. In justifying its disproportionate division

---

[1] The record shows that Wesley was scheduled to receive the $62,000 in three installments. The first disbursement of $17,000 occurred on December 15, 2004, a second installment of $20,000 was scheduled to occur on December 15, 2005, and the final installment of $25,000 was set to occur on December 15, 2006.

of property, the trial court cited Wesley's testimony that he believed, because of the inequalities in earning capacity, that Dianne should receive a disproportionate share of the marital estate, as well as his proposed division of property which also suggested a disproportionate division of the marital estate in Dianne's favor.[2]

The trial court also ordered Wesley to pay $3,100 per month in child support.  As part of its support order, the trial court made the following findings: (1) Wesley's annual income exceeds $130,000; (2) Dianne's annual income is approximately $70,000; (3) Wesley's net resources exceed $6,000 per month; (4) Dianne's net resources average $4,400 per month; (5) the percentage applied to Wesley's net resources for child support by the actual order rendered by the court is 25%; (6) the amount of child support if the percentage guidelines are applied to the first $6,000.00 of Wesley's net resources is $1,500.00; (7) the total proven needs of the children, based on the testimony, on average exceeded $4,000.00 per month; (8) the number of children before the court is two.

At the conclusion of evidence, the trial court granted the parties a divorce on grounds of insupportability.  Following the denial of Wesley's motion for new trial, Wesley filed a timely notice of appeal.

## II.  CHILD SUPPORT

Wesley's first issue consists of four sub-issues that directly challenge the trial court's award of child support.  Specifically, in sub-issues one and two, Wesley challenges the trial court's ability to award "additional child support" on top of a fixed monetary amount.  Sub-issues three and four can be viewed as a general contention that the overall amount of

---

[2] Wesley's proposed division of the marital estate suggested a 56.3%/43.7% split in Dianne's favor.

child support set by the trial court is improper. Because these issues overlap, we will consider them together.

## A. Applicable Law

A trial court has discretion to establish child support within the parameters set out in the child support guidelines of the Texas Family Code. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993); *Scott v. Younts*, 926 S.W.2d 415, 419 (Tex. App.–Corpus Christi 1996, writ denied). A trial court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Rodriguez*, 860 S.W.2d at 415; *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In determining whether the trial court abused its discretion, we view the evidence in the light most favorable to the trial court's action, indulging every presumption in favor of the judgment. *Zorilla v. Wahid*, 83 S.W.3d 247, 253 (Tex. App.–Corpus Christi 2002, no pet.). If some probative and substantive evidence supports the trial court's findings, the trial court did not abuse its discretion. *Id*.

The family code provides that when the obligor's net resources exceed $6,000 per month, the court is to apply the presumptive percentage guidelines to the first $6,000.[3] TEX. FAM. CODE ANN. § 154.126(a) (Vernon 2002). The presumptive percentage guideline applied to the net resources of an obligor with two children before the court is 25%. *Id*. §§ 154.125, 154.126. Applying the presumptive percentage guideline to the first $6,000 of Wesley's monthly net resources, we find the proper presumptive award of child support to

---

[3] Wesley does not dispute that he earns more than $6,000 per month, and because he agrees that he should pay at least the guideline maximum, we are only concerned with section 154.126 of the family code, dealing with child support in excess of the guideline maximum.

be $1,500. *Id*. § 154.125.

The trial court "may order additional amounts of child support as appropriate, depending on the income of the parties and the proven needs of the child." *Id*. § 154.126(a). If the court orders more than the presumptive award, section (b) requires that the court first determine the proven needs of the child. *Id*. § 154.126(b). If the needs of the child exceed the presumptive amount, the court must subtract the presumptive amount from those needs. *Id*. The court must then allocate between the parties the responsibility to meet the additional needs of the child, depending on the circumstances of the parties. *Id*. "However, in no event may the obligor be required to pay more child support than the greater of the presumptive amount or the amount equal to 100 percent of the proven needs of the child." *Id*. The Texas Supreme Court has interpreted this section of the family code to provide that the "needs of the child" include more than "bare necessities of life" and courts must follow the paramount guiding principle of "the best interest of the child" in determining the award. *Rodriguez*, 860 S.W.2d at 417 n.3.

In cases involving child support in excess of the guidelines, section 154.126 defines the trial court's discretion. Any such award must be calculated according to the formula set forth in that provision. If a trial court calculates the child support according to section 154.126, and the amount ordered is less than 100 percent of the child's proven needs, it is unlikely that the trial court has abused its discretion. *See In re Gonzalez*, 993 S.W.2d 147, 160 (Tex. App.–San Antonio 1999, no pet.); *accord Scott*, 926 S.W.2d at 422.

**B. Analysis**

Because the trial court awarded $3,100 in child support, which is greater than the

5

presumptive amount of $1,500, the court was required to find that the proven needs of the children exceeded the presumptive amount. TEX. FAM. CODE ANN. § 154.126(b).

The entire body of evidence concerning the children's needs was presented by Dianne. She testified that in preparing her testimony she went through various documents and calculated her monthly expenses over a six month period. According to this budget, Dianne, working as an engineer/supervisor for the Corpus Christi Army Depot, earned approximately $4,400 per month. Her total expenses for the six month period, including both her expenses and that of her two children, averaged approximately $8,905 per month. We note that although Dianne included her own expenses in reaching the $8,905 figure, the budget itself separately list the expenses of each of her two children. We further note that Wesley did not specifically object to the presentation of Dianne's budget or to its contents during the hearing. Indeed, on cross-examination, he agreed that Dianne was in the best position to explain the needs of the children.

Dianne's budget is meticulous. It includes such expenses as $1,350 for house rent; $458 for food for her and the children; $100 for the children's meals away from home; and a $315 clothing expense for both children. At trial, Dianne testified that because her daughter, K.W., has begun driving, her automotive gas bill has nearly doubled. Her budget indicates that she spends approximately $100 per month to put gas in K.W.'s. automobile and $223 a month for maintenance.

Dianne also testified that the children's personal needs have increased since the separation. According to Dianne, the children's expenses include sporting activities, athletic clubs, sports equipment, birthday parties, school and sports photographs, as well as church activities and retreats. Dianne's budget indicates an average expense of $264

6

a month for the children's church activities, $219 to maintain an athletic club membership, an average of $208 to maintain the children's school expenses, $48 for haircuts, $118 for books and magazines, and $58 per month to maintain cable television, including internet service.

Dianne's budget also includes general household expenses, such as $130 a month for electricity, $50 a month for water, a monthly household telephone bill at $31, a family cell phone expense at $390 per month, and a miscellaneous household expense at $280. Adding these expenses together, approximately $4,072 can be attributed to the needs of the children. Dianne recommended that the children receive a fixed amount of $3,100 per month.

Applying § 154.126(b) of the Texas Family Code, when the presumptive amount of child support required by the guidelines ($1,500) is subtracted from the proven needs ($4,000) then the resulting unmet needs are $2,500. The trial court ordered Wesley to pay $3,100 per month in child support. Thus, the portion of unmet needs allocated to Wesley is $1,600.[4] Based on the evidence, and because $3,100 a month is less than 100 percent of the proven needs of the children, and is within the calculations required by the code, we cannot say that the court abused its discretion. *See In re Gonzalez*, 993 S.W.2d at 160.

## C. Additional Child Support

In addition to the $3,100.00 per month ordered by the trial court, Wesley was required:

(1) purchase and maintain at [Wesley's] sole cost and expense, a separate

---

[4] The sum of the presumptive amount of child support ($1,500) and the portion of unmet needs allocated to Wesley ($1,600) is $3,100.

automobile for use and operation by each child, which automobile [sic] provides reasonable safe and reliable transportation;

(2) provide and cover, at [Wesley's] sole cost and expense, automobile liability insurance in at least the minimum limits required by Texas law; and

(3) reimburse [Dianne], on half of all customary extracurricular activities on which children are engaged, such as, but without limitation, athletics, music, camps, proms, etc.

This portion of the trial court's order is problematic. First, the requirement that Wesley "purchase" an automobile for each child is misleading. At the divorce hearing, both parties acknowledged that their daughter had already been provided her own car, and that the son would receive Wesley's Chevy Tahoe once he is old enough to drive. Second, no evidence was introduced that showed the estimated cost of providing insurance for each vehicle. Third, the record shows that Dianne included the children's extracurricular activities and the approximate cost of vehicle maintenance as part of her total expenses supporting her recommendation that Wesley pay $3,100 in child support, which, as noted above, was awarded by the trial court. As a result of these factors, it is entirely unclear as to the exact amount of child support Wesley is required to pay, or, as discussed below, whether the trial court included both the automotive maintenance expense and extracurricular activities expense in reaching the $3,100 award.

Ideally, a child support order should always specify the exact amount the obligor is required to pay. *See In re Grossnickle* 115 S.W.3d 238, 249 (Tex. App.–Texarkana 2003, orig. proceeding) (order requiring father to pay one-half of unspecified costs of child's attendance at private school was too vague to be enforceable). While we acknowledge that circumstances may exist where it will be necessary to include support provisions which do not set dollar limits, such instances are rare and usually occur because of the

8

impossibility to place a value on the obligation itself. *See In re Marriage of Thurmond*, 888 S.W.2d 269, 277 (Tex. App–Amarillo 1994, writ denied) (obligor required to pay as child support all "reasonable repairs and maintenance" on the parties' home even though such an order leaves the amount indefinite). In contrast, where an obligation has an ascertainable value but for whatever reason it is left undetermined, the inclusion of the obligation within a support order, without any reference as to its specific value, in addition to a set monetary amount, will usually create uncertainty as to the total amount of child support an obligor will be required to pay. For example, here, Wesley is ordered to provide automobile insurance for each of the children's vehicles in addition to the $3,100 monthly award. Because of the failure to introduce into evidence the approximate cost of providing insurance for both vehicles, we are left guessing as to the total amount of child support Wesley is expected to pay in the following years.

The test of the certainty required of an order enforceable by contempt is that it must spell out the details of compliance in clear, specific, and unambiguous terms so that the person affected by the order will readily know what obligations are imposed on him. *Ex Parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967). By that test, the mere requirement that Wesley provide insurance for both of the children's vehicles, without any indication as to its approximate cost, and without any specification as to whom payment should be made, when payment should be made, or whether it be paid in installments or whether a lump sum payment is sufficient, is too vague to be enforceable. *See Grossnickle*, 115 S.W.3d at 249. Indeed, we distinguish the obligation to provide insurance from those obligations whose monetary value are inherently impossible to ascertain. *Cf. In re Marriage of*

*Thurmond*, 888 S.W.2d at 277 (recognizing that in those situations where the value of a support provision cannot be ascertained, there must be some objective standard by which the obligation may be measured.) As such, the absolute failure to take into account the exact effect this obligation has on the total amount of child support Wesley is required to pay results in a support obligation that is both uncertain and indefinite. We reverse this portion of the support order. *See Grossnickle*, 115 S.W.3d at 249.

Wesley is also required to provide vehicle maintenance for the children's vehicles and pay one-half of the children's school related expenses. In contrast to the automobile insurance obligation, Dianne detailed the approximate cost of vehicle maintenance at $223 and $208 dollars for the children's school related activities. Where, like here, the value of an obligation is known, and where a trial court has availed itself of the family code's child support guidelines in reaching a support order, the assumption, based on the statutory requirement that the trial court consider the "proven needs" of the children, is that the amount reached is all-inclusive of those needs. *See* TEX. FAM. CODE ANN. § 154.126(b) ("The proper calculation of a child support order that exceeds the presumptive amount established for the first $6,000 of the obligor's net resources requires that the entire amount of the presumptive award be subtracted from *the total proven needs* of the child.") (emphasis added). As the family code clearly contemplates an exact dollar amount based on those needs, any award of "additional child support" must not have been included within the evidence supporting the monetary award, otherwise, a windfall in the form of a double recovery exist for the obligee.

Here, Dianne's budget clearly allocates a set amount for both vehicle maintenance and the children's school related activities. Dianne's budget was also the only evidence

10

used to prove up the children's needs. Because the expected cost of providing automotive maintenance and the cost of providing for the children's extracurricular activities was used as evidence supporting her recommendation that Wesley pay $3,100 a month in child support, and because the trial court utilized the family code's formula in reaching the $3,100 award, we assume, without any evidence indicating otherwise, that these values were included in the trial court's overall assessment of the "proven needs" of the children. Thus, the requirement that Wesley provide these obligations in addition to the $3,100 constitutes a clear double recovery for Dianne. For this reason, we also reverse this portion of the support order.

In sum, we find that sufficient evidence exists warranting the trial court's award of $3,100 per month in child support. Furthermore, because of the uncertainty created in its "additional" insurance obligation, and because the obligations to provide for the children's extracurricular activities and automotive maintenance constitutes a double recovery, we reverse these portions of the support order. Lastly, as noted above, the obligation that Wesley "purchase" an automobile for each child is contrary to the evidence presented at the divorce hearing; each child either has or will be provided a vehicle by the parties. For this reason, we also reverse this portion of the support order.

### III. PROPERTY DIVISION

Wesley's second issue consists of three sub-issues that challenge the trial court's division of property. In sub-issue one, Wesley asserts the trial court erred in characterizing certain unvested stock options as community property. In sub-issue two, Wesley argues that the trial court abused its discretion in dividing the marital estate as a result of assessing improper values on certain assets. Sub-issue three is a general contention that

11

the trial court abused its discretion by dividing the community property in a manner that was not just or equitable and that the division is not supported by evidence. **A. Stock Options**

Wesley first argues that the trial court erred in awarding Diana 65% of 8,000 stock options that remained unvested at the time of trial. According to Wesley, this award was improper because (1) the options could not be classified as community property, and (2) their value depended upon his post-divorce effort (i.e., continued employment with the company).

Wesley was issued the stock options on June 9, 2004, so he acquired them while he and Dianne were still married. At trial, Wesley testified that he received the stock options as part of an incentives package offered to him by Newpark. Wesley emphasized, however, that his right to exercise the options was contingent on his continued employment with Newpark. The stock agreement shows that the 8,000 shares of Newpark stock were scheduled to vest over a three year period. Thus, of the 8,000 shares, 2,667 were scheduled to vest on June 9, 2005; 2,667 shares were to vest on June 9, 2006; and 2,666 were scheduled to vest on June 9, 2007. Wesley argues that because these options could not be exercised at the time of divorce, and were contingent on continued employment on his part, they constituted separate property, consequently, the trial court could not award any interest in them to Dianne.

At the time of trial, it was well settled that stock options acquired during marriage were considered a contingent property interest and a community asset subject to division

upon divorce.[5]  *See Boyd v. Boyd*, 67 S.W.3d 398, 410-11 (Tex. App–Fort Worth 2002, no pet.); *Kline v. Kline*, 17 S.W.3d 445, 446 (Tex. App.–Houston [1st Dist.] 2000, pet. denied); *Charriere v. Charriere*, 7 S.W.3d 217, 219 (Tex. App.–Dallas 1999, no pet.); *Bodin v. Bodin*, 955 S.W.2d 380, 381 (Tex. App.–San Antonio 1997, no pet.); *Delmer v. Delmer*, 836 S.W.2d 696, 699 (Tex. App.–Dallas 1992, no writ).  The fact that stock options were not fully vested by the time of divorce did not affect their character as community property, as long as the options were acquired during the marriage.  *See Boyd*, 67 S.W.3d at 410; *Kline*, 17 S.W.3d at 446; *Bodin*, 955 S.W.2d at 381.

Here, it is undisputed that the stock options were acquired during the marriage; thus, they were a contingent community property interest subject to divestiture by the trial court. *See Boyd*, 67 S.W.3d at 410.  We hold that the trial court properly characterized the stock options as community property, and therefore did not abuse its discretion in dividing the stock options accordingly.  *Id*.

## B. Property Valuations

In sub-issue two, Wesley contends that the trial court abused its discretion by improperly valuing certain community property, leading to a division of the estate that varied from the court's intended 65/35 split.

Wesley first contends the trial court erred in valuing Dianne's pension at $4,996.

---

[5]  In September 2005, the Texas Legislature amended the family code to provide for the characterization and division of stock options.  *See* TEX. FAM. CODE ANN. §§ 3.007(d)-(f) (Vernon 2006).  The statute outlines a time-rule formula to establish the percentage of each stock option that is separate property based on the portion attributable to the spouse's separate contribution after divorce.  The numerator is the period in months from the date the option can be exercised.  The denominator is the period in months from the date the option is granted to the date the option can be exercised.  This fraction is applied to each option to determine the separate property interest.  This case was tried prior to the statute's enactment, consequently, it has no application to the case at hand.

When valuing a retirement or benefits plan for the purpose of dividing it, the number of months the parties were married under the plan is divided by the total number of months the spouse was employed under the plan at the time of divorce. *Shanks v. Treadway*, 110 S.W.3d 444, 446 n.3 (Tex. 2003); *Berry v. Berry*, 647 S.W.2d 945, 946-47 (Tex. 1983). That fraction is then multiplied by the non-employee spouse's "just and right" share in the community interest as determined by the trial court, which is then multiplied by the value of the community's interest in the plan *at the time of the divorce*. *Shanks*, 110 S.W.3d at 446 n.3 (emphasis added).

In its Findings of Fact and Conclusions of Law, the trial court found that Dianne's pension plan was valued at $4,996. At trial, Dianne testified that the current cash value of her pension was $4,996; no other evidence was introduced to dispute this amount. On appeal, Wesley argues that Dianne's pension is worth either $4,996 or $524,953 (the estimated value of her pension after 36 years of service). The law is clear. The value of a retirement or benefits plan is calculated at the time of divorce rather than at the time of retirement. *Shanks*, 110 S.W.3d at 446 n.3; *Berry* 647 S.W.2d at 946-47. Because Wesley did not present any evidence disputing the $4,996 figure, and because Wesley does not provide this Court with any sort of analysis showing that the trial court improperly valued her plan at the time of divorce, we are unable to find that the trial court abused its discretion in valuing Dianne's pension at $4,996. *See generally Naguib v. Naguib*, 137 S.W.3d 367, 374-76 (Tex. App.–Dallas, 2004 pet. denied).

Wesley further contends that the trial court incorrectly valued the following items: (1) a 2004 incentive bonus (valued at $19,417.20); (2) employer provided car allowance (valued at $12,000); (3) closing cost on a new home provided by employer (valued at

14

$7,000); and (4) an employer provided hunting lease (valued at $16,000). Wesley argues that each item should have been excluded from the trial court's total allocation of the parties' community assets; therefore, the trial court committed error in assigning these items "on his side of the ledger." The total assigned value for these items is $54,417.20. Lastly, Wesley argues that the trial court failed to include Dianne's annual leave, valued at $8,277.

The total value of the community property divided by the trial court amounted to $1,784,181.18, of which $1,168,621.52 was awarded to Dianne and $615,559.66 was awarded to Wesley. In terms of percentages, Dianne received approximately 65% of the community estate, while Wesley received 35%. For purposes of analysis, with the exception of Dianne's pension, we will assume without deciding that the trial court improperly valued the above items. Accepting Wesley's argument that the trial court erred in allocating $54,417.20 as part of the community estate, and also erred in excluding $8,227 of Dianne's annual leave, Dianne would receive approximately 68% of the community estate with Wesley receiving 32%, an adjustment of approximately 3%.[6] The mere fact that certain assets are either undervalued or overvalued does not, in and of itself, constitute an abuse of discretion. *Thomas v. Thomas*, 603 S.W.2d 356, 358 (Tex. App.–Houston [14th Dist.] 1980, writ dism'd). In the instant case, we find that giving Dianne, at most, 68% of the estate rather than the 65% intended, does not constitute an abuse of discretion. *See Thomas*, 603 S.W.2d at 358 (affirming 60/40 split where valuation

---

[6] Deducting the $54,417.20 from the community estate, but adding $8,227 to it from Dianne's annual leave, the total community estate would be valued at $1,738,040.98, of which a total of $1,176,898.52 would go to Dianne and $561,142.46 would go to Wesley.

error could have resulted in a 70/30 split); *see also Bogle v. Bogle*, No. 13-05-608-CV, 2007 Tex. App. LEXIS 7151, at *9 (Tex. App.–Corpus Christi Aug. 24, 2007, no pet. h.) (affirming a 65/35 split where valuation error could have resulted in a 73/27 split).

## C.  Disproportionate Division of Property in a "No Fault" Divorce

In his final sub-issue, Wesley contends that the trial court abused its discretion in awarding Dianne a disproportionate division of the community estate.

The Texas Family Code requires the trial court to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard of the rights of each party . . ." TEX. FAM. CODE ANN. § 7.001 (Vernon 2006).  We review the trial court's division of property in a divorce decree under an abuse of discretion standard.  *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981).  "Mathematical precision in dividing property on divorce is usually not possible." *Id*. at 700.  Wide latitude and discretion rests with the trial court, and it "is empowered to use its legal knowledge and its human understanding and experience." *Id*.  We will reverse on appeal only if the property division is so disproportionate as to be manifestly unjust and unfair.  *Smith v. Smith*, 22 S.W.3d 140, 143 (Tex. App–Houston [14th Dist.] 2000, no pet.).

Community property does need to be divided equally, but the division must be equitable.  *See Kimsey v. Kimsey*, 965 S.W.2d 690, 704 (Tex. App.–El Paso 1998, pet. denied).  The Texas Supreme Court has given us a non-exclusive list of factors which the trial court may consider in dividing the marital estate.  *See Murff*, 615 S.W.2d at 698-99. These factors include the disparity and abilities of income or earning capacity, the spouses' capacities and abilities, benefits which a party not at fault would have derived from the

marriage had it continued, business opportunities, education, relative physical condition and obligations, disparity of ages, size of separate estates, and nature of the property. *Id*.; *see also Garcia v. Garcia*, 170 S.W.3d 644, 653 (Tex. App.–El Paso 2005, no pet.).

The trial court's findings of fact suggests that because of the disparity in income between the parties, and because Dianne essentially had to start anew, it awarded a disproportionate share of the community estate to Dianne. The record supports these findings.

Wesley is a senior operations advisor for Newpark. His annual income is approximately $130,000. On top of his salary, Wesley was scheduled to receive $62,000 in "additional compensation." He also benefits from a monthly car allowance ($1,000), a country club membership, a furnished automobile, and a hunting lease, all provided by Newpark. Wesley also owns Newpark stock and is provided yearly performance incentive bonuses. Dianne testified that Wesley had always been in charge of the family's finances, that she relied on his income to pay all major expenses, and that her monthly income (approximately $4,400 net) went to the "well-being of the household." The record shows that Dianne has been a civil service employee for 18 years and earns approximately $70,000 a year. Critically, on cross-examination, Wesley acknowledged that his earning capacity is greater than Dianne's, and, therefore, she should receive a greater share of the community estate.

Based on the record as provided, we are unable to find that the trial court abused its discretion in awarding a disproportionate division in Dianne's favor. The trial court had before it ample evidence suggesting a great disparity in the relative earning capacities of the parties. Its findings especially emphasize the fact that Wesley testified that he earns

17

more than Dianne and that she should receive a greater share of the community estate. With no physical limitations or illnesses demonstrated by the record, Wesley who was forty-seven at the time of trial, can expect to continue to achieve continuing financial success, and as the record demonstrates, had already taken steps in that direction. Though she benefitted from Wesley's success during the marriage, Dianne would necessarily be deprived of those benefits because of the divorce. Because disparity in income is among the many factors a trial court may consider in making the division of the marital estate, *see Murff*, 615 S.W.2d at 699, we hold that Wesley has not demonstrated that the trial court's decision to award Dianne 65% (or potentially 68%) of the community property was so disproportionate as to be inequitable. Therefore, Wesley has not demonstrated that the trial court clearly abused its discretion by that disposition.

Wesley also seems to argue that because the trial court granted the divorce without regard to fault, any fault on his part is not to be considered in the division of the community estate. The record here, however, does not indicate that fault was considered by the trial court. As Wesley concedes, the trial court, through its amended findings of fact and conclusions of law, recanted any impression that its original findings of fact implicated him in an adulterous affair while he was married to Dianne. Although the record shows that Dianne alleged and testified that Wesley was unfaithful during their marriage, Wesley denied those allegations. The fact-finder is the sole judge of the weight and credibility of the evidence. *See O'Carolan v. Hopper*, 71 S.W.3d 529, 533 n.4 (Tex. App–Austin 2002, no pet.). Because the divorce was granted on no-fault grounds, and because the record does not demonstrate that fault was considered as a factor in dividing the estate, we are unable to sustain Wesley's argument on appeal. *Id*. Accordingly, we overrule Wesley's

18

final issue.

## IV. CONCLUSION

In summary, we reverse only those portions of the child support order requiring Wesley to "purchase" an automobile for each child, requiring Wesley to provide automotive insurance on each of the children's vehicles, requiring Wesley to provide automotive maintenance, and to provide for the children's extracurricular activities. We sustain, however, the trial court's award of $3,100 per month in child support. All points of error challenging the trial court's division of property are overruled.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this disposition.

/s/ ROGELIO VALDEZ
ROGELIO VALDEZ,
Chief Justice

Memorandum Opinion delivered and filed
this the 13th day of March, 2008.