COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-318-CV

 

 

JUDY ALLEN, INDEPENDENT                                                 APPELLANT

ADMINISTRATRIX
OF THE 

ESTATE
OF MARVIN FRED 

ALLEN,
AND INDIVIDUALLY, 

AS THE SURVIVING SPOUSE                                                                 

 

                                                   V.

 

JOHN F. HAVENS                                                                   APPELLEE

 

                                              ------------

 

               FROM
PROBATE COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








In this interlocutory appeal,
Appellant Judy Allen, independent administratrix of the estate of Marvin Fred
Allen (AFred Allen@), and
individually, as the surviving spouse, challenges the trial court=s order granting the special appearance of Appellee John F.
Havens.  Before we address the merits of
the trial court=s special
appearance ruling, we must address two preliminary issues raised by the
parties.  First, we must address whether
Allen timely perfected her appeal; Havens claims that she did not.  Second, we must determine exactly what
evidence the trial court considered in granting Havens=s special appearance.  For the
reasons discussed below, we hold that Allen=s appeal is timely and that the trial court properly did not consider
Allen=s exhibits A, B, and D through M at the special appearance hearing.  Concerning the merits of the trial court=s ruling granting Havens=s special appearance, we affirm.

II.  Factual and Procedural Background  

At issue in the underlying
case is the payment of the proceeds of a $1,000,000 life insurance policy on
the life of Fred Allen, who is now deceased. 
The insurance company paid the proceeds to CreditWatch, a group of
entities owned by Havens, instead of to Fred Allen=s estate as Judy Allen contends should have occurred.








Allen sued Havens in his
individual capacity, as well as other people and entities, asserting that Athrough his agents,@ Havens committed fraud, tortious interference with an inheritance,
and conspiracy.  Havens entered a rule
120(a) special appearance, arguing that because he resides in Florida and does
not have sufficient Texas contacts, Texas courts have no jurisdiction over him
individually.  On June 7, 2005, after
holding a hearing on the special appearance, the probate court granted Havens=s motion and signed an order dismissing for want of personal jurisdiction
the claims asserted against Havens individually.  On September 1, 2005, Allen perfected this
appeal.  

III.  Timeliness of Allen=s Notice of Appeal

In a single cross issue,
Havens contends that Allen failed to timely perfect this interlocutory appeal
because she failed to file a notice of appeal within twenty days after the
trial court signed the order granting Havens=s special appearance and because she failed to comply with the
requisites set forth in rule 306a(4) and (5). 
See Tex. R. Civ. P.
306a(4), (5).








Allen filed her notice of
appeal on September 1, 2005.  Five days
later, on September 6, 2005, Allen filed a sworn motion to establish the
applicability of rule 306a(4) and (5). 
The motion alleged that Allen did not receive actual notice of the trial
court=s order granting Havens=s special appearance and dismissing the suit against Havens until
August 19, 2005Cmore than
twenty days after the trial court signed the orderCso that under rule 306a(4), the time period for filing a notice of
appeal began to run on that date.  On
January 9, 2006, pursuant to rule 306a(4) and (5), the trial court made a
specific finding that August 18, 2005 was the date on which Allen received
notice and actual knowledge of the order granting Havens=s special appearance.  Because
Allen=s notice of appeal was filed on September 1, a date within twenty days
of the August 18, 2005 date-of-actual-knowledge, her notice of appeal was
timely filed.  See Tex. R. Civ. P. 306a(4) (providing that
when notice of a judgment or order is not received until between twenty and
ninety days after it is signed, filing deadlines begin to run on date notice or
actual knowledge is acquired); Tex. R.
App. P. 26.1 (requiring notice of appeal to be filed within twenty days
of the date on which the order or judgment being appealed is signed).

But Havens argues that 

[a]fter
a hearing on the party=s
sworn [rule 306a] motion, the trial court must sign a written order that finds
the date when the party or the party=s attorney received notice or
acquired actual knowledge of the signed order, and the trial court must enter
the order within the trial court=s >re-invoked=
plenary jurisdiction.

 








Havens argues that after the trial court=s plenary power expires, the trial court lacks jurisdiction to enter
an order determining the date on which notice or actual knowledge was
received.  Consequently, Havens contends
that Allen was required to obtain an order from the trial court on her rule
306a motion within the trial court=s Are-invoked
plenary power,@ that isCin the absence of a timely filed postjudgment motion that would extend
the appellate timetableCwithin
thirty days of August 18 or by September 17. 
Because the trial court did not enter an order until October 27, Havens
contends that the trial court lacked jurisdiction to determine a date of actual
notice under rule 306a(5) and that Allen=s notice of appeal remained due within thirty days of the June 7, 2005
order granting Havens=s special
appearance and dismissing Allen=s suit against him.








We recognize that some
confusion exists on the issue of a trial court=s Are-invoked@ plenary jurisdiction following a final judgment when a rule 306a
motion is filed.  See, e.g., In re
Lynd Co., 195 S.W.3d 682, 685-87 (Tex. 2006); John v. Marshall Health
Servs., Inc., 58 S.W.3d 738, 740-42 (Tex. 2001); Moore Landrey, L.L.P.
v. Hirsch & Westheimer, P.C., 126 S.W.3d 536, 539-43 (Tex. App.CHouston [1st Dist.] 2003, no pet.). 
The trial court=s plenary
power in this case, however, is not an issue because this is an interlocutory
appeal.  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(7) (Vernon Supp. 2006). 
A trial court retains continuing control over interlocutory orders and
has the power to set those orders aside any time before a final judgment is
entered.  See, e.g., Fruehauf Corp. v.
Carrillo, 848 S.W.2d 83, 84 (Tex. 1993). 
When the trial court entered the order dismissing Allen=s claims against Havens, when Allen filed her rule 306a motion, and
when the trial court made its rule 306a(5) finding, Allen=s claims against other defendants remained pending in the trial court;
no severance order had been entered. 
Thus, the trial court here possessed primary jurisdiction over
Allen=s suit at the time it entered its 306a(5) finding of a date of notice
or actual knowledge; because no judgment had been entered and the cause was
still pending in the trial court, the trial court was not acting within any
period of plenary jurisdiction. 
Accordingly, we hold that Allen timely perfected her appeal by filing
her notice of appeal on September 1, 2005, a date that is within twenty days of
the date on which the trial court determined that she received notice of the
June 7, 2005 order granting Havens=s special appearance and dismissing her claims against him.  We overrule Havens=s cross issue.

IV.  Evidence Considered By Trial Court In
Granting Special Appearance

The next issue we must
address is exactly what evidence the trial court considered in granting Havens=s special appearance.  At the
special appearance hearing, Allen offered exhibits A through M as evidence for
the trial court=s
consideration.  These exhibits consist of
documents that Allen found in her husband=s personal files at their home. 
The documents appear to relate to CreditWatchCa group of Texas entities owned by HavensCbut do not mention the life insurance policy or payment of its
proceeds that are in dispute in the underlying case.








The parties take polar
opposite positions on the issue of whether the trial court admitted and
considered exhibits A, B, and D through M. 
Allen asserts that she offered the exhibits into evidence as Abusiness records of the estate of Marvin Fred Allen@ and that she (Judy Allen) was the custodian of the records under
Texas Probate Code section 233 and Texas Rules of Evidence 803 and 902.  See Tex.
Prob. Code Ann. ' 233 (Vernon
2003); see also Tex. R. Evid.
803, 902.  Allen claims that, although
Havens objected to the exhibits as she offered them, the trial court took the
admissibility of the exhibits under advisement and ultimately never ruled on
Havens=s objections so that, according to Allen, Havens=s objections to the exhibits were waived.  Havens, on the other hand, claims that the
exhibits are records of CreditWatch, that Allen is not a proper custodian of
the records of CreditWatch, and that the exhibits constituted inadmissible
hearsay because Allen testified that she had no personal knowledge of the
records and could not testify that the documents were kept in the course of
CreditWatch=s regularly
conducted business activity or that it was CreditWatch=s regular practice to make these records.  Consequently, Havens claims that the trial
court properly excluded and did not consider exhibits A, B, and D through M
when it made its special appearance ruling.








The record reveals that Allen
offered exhibits A through M into evidence during her own testimony at the
special appearance hearing.  Havens
objected to each exhibit, except exhibit C,[2]
and that the trial court overruled Havens=s objections to some exhibits and sustained his objections to other
exhibits.  But then, about two-thirds of
the way through the hearing, the trial court stated on the record that it was
backtracking and, beginning with exhibit A, was taking the admissibility of all
of the exhibits under advisement.  The
trial court then asked Allen to lay a predicate for each of the exhibits and
heard objections from Havens.  During
this time, the trial court admitted exhibits J and M.  At the conclusion of the special appearance
hearing, however, the trial court reiterated that it was Agoing to take this all under advisement@ and asked the parties to submit post-hearing briefs on the
application of the business records hearsay exception.  The parties filed post-hearing briefs, and
the trial court subsequently granted Havens=s special appearance; the order did not contain a ruling on the
admissibility of Allen=s exhibits.








Havens claims that in
granting the special appearance, the trial court did not consider Allen=s exhibits.  Havens points to a
ruling that the trial court made at a subsequent hearing on Allen=s motion to disqualify counsel for Havens.[3]  Allen attempted at that hearing to admit the
business records of another corporation Fred Allen had worked with on the basis
that she was the custodian of the records because she was the independent
administratrix of Fred Allen=s estate.  The trial court stated,


I
think this is the same thing we rehashed earlier with whether or not the
personal representative of an estate who inherits, so to speak, her husband=s
records, then becomes the custodian of those records for purposes of rules of
evidence.  And I believe I ruled against
that earlier. 

 








Allen=s counsel reminded the trial court that it had Anever ruled on that.@  The trial court stated, AWell, I can rule on this now but I do not think that this exception
fits an affidavit and these attachments that occurred B and things that have occurred long before she became either our
administratrix or the alleged owner of these companies.@  Thus, the record before us
establishes that the trial court ultimately sustained Havens=s hearsay objections to exhibits A, B, and D through M and did not
consider these exhibits in granting Havens=s special appearance.[4]  Accord Ballard v. King, 652 S.W.2d
767, 769 (Tex. 1983) (examining all subsequent hearings for ruling on motion to
quash); In re Gonzalez, 993 S.W.2d 147, 154 (Tex. App.CSan Antonio 1999, no pet.) (examining trial court=s comments at subsequent hearing to clarify ruling made at prior
hearing).

To the extent that Allen=s issue challenges the propriety of a trial court ruling excluding
exhibits A, B, and D through M, we review the record to determine whether Allen
established that the exhibits fall within the business records hearsay
exception.  See Tex. R. Evid. 902(10).  The business records hearsay exception
provides that

[a]ny
record or set of records or photographically reproduced copies of such records,
which would be admissible under Rule 803(6) or (7) shall be admissible in
evidence in any court in this state upon the affidavit of the person who would
otherwise provide the prerequisites of Rule 803(6) or (7), that such records
attached to such affidavit were in fact so kept as required by Rule 803(6) or
(7), provided further, that such record or records along with such affidavit
are filed with the clerk . . . .

 

Id.  Texas Rule of Evidence 803(6) allows the
records of regularly conducted activity to be admitted into evidence if the
records are made at or near the time by, or from information transmitted by, a
person with knowledge, if kept in the course of a regularly conducted business
activity, and if it was the regular practice of that business activity to make
the record, all as shown by the testimony of the custodian or other qualified
witness, or by affidavit that complies with rule 902(10).  Tex.
R. Evid. 803(6).








As discussed above, during
the special appearance hearing, Allen, as administratrix of the estate of Fred
Allen, tried to introduce into evidence the documents that she found among her
deceased husband=s
effects.  But as Allen offered the
exhibits into evidenceCwith the
exception of exhibit CCHavens
repeatedly took Allen on voir dire and elicited testimony establishing that
Allen was not the Acustodian@ of the records and was not an Aother qualified witness@ because she lacked personal knowledge of the documents and their
contents; she simply found them in her late husband=s files.  Consequently, the
record demonstrates that Allen was unable to authenticate exhibits A through M,
excluding exhibit C.  Thus, the trial
court properly excluded the exhibits, which were business records of
CreditWatch, because they were not authenticated by Allen merely by virtue of her
role as administratrix.  See generally
Tex. R. Evid. 803(6),
902(10).  Contra Drew v. Am. Auto.
Ins. Co., 207 S.W. 547, 548 (Tex. Civ. App.CFort Worth 1918, no writ) (deeming administratrix as custodian of estate=s records, including decedent=s automobile insurance policy, for use in wrongful death
lawsuit).  We overrule Allen=s second issue.

 

 

 








V.  Trial Court
Properly Granted Special Appearance Based 

on Lack of Personal Jurisdiction

 

Having held that the trial
court properly excluded the exhibits that Allen tendered, except exhibit C, we
may now review the evidence that the trial court properly had before it in
determining whether it had personal jurisdiction over Havens.

A.     Standard of Review








Whether a trial court has
personal jurisdiction over a defendant is a question of law.  BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 793 (Tex. 2002); TravelJungle v. Am. Airlines, Inc., 212
S.W.3d 841, 845 (Tex. App.CFort Worth 2006, no pet.); SITQ, E.U., Inc. v. Reata Rests., Inc.,
111 S.W.3d 638, 644 (Tex. App.CFort Worth 2003, pet. denied). 
The plaintiff bears the initial burden of pleading sufficient
allegations to bring a nonresident defendant within the provisions of the Texas
long‑arm statute.  BMC Software,
83 S.W.3d at 793; TravelJungle, 212 S.W.3d at 845; Reata, 111
S.W.3d at 644.  A nonresident defendant
challenging a Texas court=s personal
jurisdiction over it must negate all jurisdictional bases.  BMC Software, 83 S.W.3d at 793; TravelJungle,
212 S.W.3d at 845; Reata, 111 S.W.3d at 644.  We review all of the evidence in making this
determination.  TravelJungle, 212
S.W.3d at 845; Reata, 111 S.W.3d at 645; Michel v. Rocket Eng=g Corp., 45 S.W.3d 658, 667 (Tex.
App.CFort Worth 2001, no pet.).

When, as here, there are no
findings of fact and conclusions of law, the trial court=s order implies all facts found in the evidence necessary to support
the order.  BMC Software, 83
S.W.3d at 794; TravelJungle, 212 S.W.3d at 845; Reata, 111 S.W.3d
at 645.  Because here the appellate record includes both the reporter=s and clerk=s records,
however, these implied findings are not conclusive.  BMC Software, 83 S.W.3d at 795; TravelJungle, 212 S.W.3d at 845; Reata, 111 S.W.3d at 645. 
We may review the trial court=s resolution of disputed fact issues for legal and
factual sufficiency under the same standards of review that we apply in
reviewing a jury=s or trial court=s findings of fact
at trial.  TravelJungle, 212 S.W.3d at 845; Michel, 45 S.W.3d at 668.

B.      Personal
Jurisdiction








A Texas court may
assert personal jurisdiction over a nonresident defendant only if the
requirements of the Texas long-arm statute and due process under the Fourteenth
Amendment are satisfied.  U.S. Const. amend. XIV, ' 1; Tex. Civ. Prac. & Rem. Code Ann. '' 17.041-.045 (Vernon 1997 & Supp. 2006); Helicopteros Nacionales
de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S. Ct. 1868, 1871-72
(1984); CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996) (orig.
proceeding); TravelJungle, 212 S.W.3d at 845; Michel, 45 S.W.3d at 668.

The Texas long-arm
statute permits Texas courts to exercise jurisdiction over a nonresident
defendant who Adoes business@ in Texas.  Tex. Civ. Prac. & Rem. Code Ann. ' 17.042; BMC
Software, 83 S.W.3d at 795; TravelJungle, 212 S.W.3d at 845; Reata, 111 S.W.3d at 645. 
The statute lists some activities that constitute Adoing business,@ including the
commission of a tort, in whole or in part. 
Tex. Civ. Prac. & Rem. Code
Ann. ' 17.042; TravelJungle, 212 S.W.3d at 845; Reata, 111 S.W.3d at 645. 
The list of activities set forth in section 17.042 is not exclusive,
however.  BMC Software, 83 S.W.3d
at 795; TravelJungle, 212 S.W.3d at 845.  Section 17.042=s broad language
extends Texas courts= personal jurisdiction only Aas far as the
federal constitutional requirements of due process will permit.@  BMC Software, 83 S.W.3d at 795 (quoting
U-Anchor Adver., Inc., N.H. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977), cert.
denied, 434 U.S. 1063 (1978)); TravelJungle, 212 S.W.3d at 845; Reata, 111 S.W.3d at 645.








Due process is
satisfied when (1) the defendant has established minimum contacts with the
forum state and (2) the exercise of jurisdiction comports with traditional
notions of fair play and substantial justice. 
Int=l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); BMC Software, 83
S.W.3d at 795; TravelJungle, 212 S.W.3d at 846; Reata, 111 S.W.3d at 645.

A nonresident
defendant who has Apurposefully availed@ itself of the
privileges and benefits of conducting business in a foreign jurisdiction has
sufficient contacts with the forum to confer personal jurisdiction on a court
in that forum.  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 474-76, 105 S. Ct. 2174, 2183 (1985); BMC
Software, 83 S.W.3d at 795;
TravelJungle, 212 S.W.3d at 846.

Three factors are
important in determining whether a defendant has purposefully availed itself of
the forum:  first, only the defendant=s contacts with
the forum count; second, the acts relied on must be purposeful rather than
merely fortuitous; and, third, the defendant must seek some benefit, advantage,
or profit by availing itself of the forum. 
Michiana Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777, 785 (Tex. 2005); Karstetter v. Voss, 184 S.W.3d
396, 403 (Tex. App.CDallas 2006, no pet.); TravelJungle, 212 S.W.3d at 846.








Personal
jurisdiction exists if the nonresident defendant=s minimum contacts
give rise to either specific jurisdiction or general jurisdiction.  Helicopteros Nacionales de Colombia,
466 U.S. at 413-14, 104 S. Ct. at 1872; BMC Software, 83 S.W.3d at 795; TravelJungle, 212 S.W.3d at 846; Reata, 111
S.W.3d at 646.  A trial court has general
jurisdiction over a nonresident defendant when that defendant=s contacts in a
forum are continuous and systematic so that the forum may exercise personal
jurisdiction over the defendant even if the cause of action did not arise from
or relate to activities conducted within the forum state.  BMC Software, 83 S.W.3d at 796; TravelJungle, 212 S.W.3d at 846; Reata, 111
S.W.3d at 646.  In contrast, specific
jurisdiction is present if the nonresident defendant=s alleged
liability arises from or is related to an activity conducted within the
forum.  BMC Software, 83 S.W.3d at
796; TravelJungle, 212
S.W.3d at 846-47; Reata, 111 S.W.3d at 646. 
When a plaintiff asserts that a trial court has specific jurisdiction
over a nonresident defendant, the minimum contacts analysis focuses on the relationship
among the defendant, the forum, and the litigation.  Guardian Royal Exch. Assurance,
Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 227-28 (Tex. 1991); TravelJungle, 212 S.W.3d at 847; Reata, 111 S.W.3d at
646.

C.     Allen=s Allegations of Personal Jurisdiction








To begin our review of the
evidence, we look to the pleadings.  In
her second amended original petition, Allen stated that Havens is an individual
who resides in Naples, Florida, and who may be served through the Secretary of
State.  However, Allen stated that the
trial court had jurisdiction because the probate of her husband=s estate was established in the trial court and because the defendants
Aeither reside or conduct business in Tarrant County, Texas.@  Allen asserted a cause of
action for fraud against Havens, alleging that Havens Acommitted both actual and/or constructive fraud as it relates to the
right of [Allen] to the proceeds of [the key man insurance policy].@  Specifically, Allen stated
that Havens controlled the CreditWatch entities and, Ain all likelihood, 

. . . >pocketed= the
$1-million-dollar-plus check issued by United of Omaha Life Insurance Company.@  Allen also asserted causes of
action against Havens for tortious interference with an inheritance, conspiracy
to commit fraud, and conspiracy to tortiously interfere with inheritance.  Thus, Allen asserts that Texas has specific
jurisdiction over Havens, and she has pleaded a sufficient jurisdictional basis
to require Havens to negate this basis of jurisdiction.  BMC Software, 83 S.W.3d at 793.

On appeal, Allen likewise
claims that Havens is subject to jurisdiction in Texas because the causes of
action that she asserts against him are torts for which he may be held
individually liable.  Allegations that a
tort was committed in Texas satisfy the long‑arm statute but not due
process concerns.  Michiana, 168
S.W.3d at 788.  Thus, the proper analysis
focuses on whether Havens met his burden to negate Allen=s allegations that his activities satisfy the minimum contacts
requirement of due process.








D.      Evidence Offered by the Parties Regarding
Havens=s Special
Appearance

 

In his special
appearance, Havens set forth facts demonstrating a lack of contacts with
Texas.  Havens=s affidavit
explains that he is a resident of the State of Florida, that he does not have
sufficient minimum contacts with the State of Texas to justify the trial court=s imposition of
jurisdiction over him, and that he has not, in his individual capacity,
committed any acts nor consummated any transactions as alleged by Allen to
constitute the requisite contact with Texas. 
Specifically, Havens=s affidavit alleges:

$                  
that he has not in his individual capacity
regularly engaged in any business or business enterprise in Texas, nor has he,
in his individual capacity, directly or indirectly, through any agent or by
mail, telephone, telegraph, or any other means of communication, regularly
transacted business or contracted to supply services or goods in Texas or to
any Texas resident;

 

$                  
that he has not appointed a registered agent for
service of process nor has he obtained a certificate to do business in Texas in
his individual capacity;

 

$                  
that he does not maintain and has never
maintained an office in the State of Texas;

 

$                  
that he has never owned real or personal property
located within Texas and has never leased any real or personal property in
Texas;

 

$                  
that he does not have an address in the State of
Texas and does not maintain a telephone number within the State of Texas;








 

$                  
that he does not maintain and has not maintained
a bank account in the State of Texas;

 

$                  
that he has not advertised in
the State of Texas; and

$                  
that he has never brought a lawsuit in the State
of Texas. 

 

Allen responded, arguing that
the trial court had specific jurisdiction over Havens in regard to the life
insurance proceeds dispute.  Allen
contends that the following acts give rise to the trial court=s specific jurisdiction over Havens:

$                  
Havens may well have personally pocketed the
proceeds in dispute;

 

$                  
The dispute is between the ACreditWatch@
entities (which Havens was and is in control of and which are Texas entities)
and Allen=s
widow, who is a Texas resident;

 

$                  
In connection with his activities at ACreditWatch,@
Havens communicated by faxes, telephone conversations, emails, and letters to
Allen on a regular basis in Texas;

 

$                  
Havens came to Texas on ACreditWatch@
business;

 

$                  
Havens profited from his Texas ties and owned
interest in several Texas entities, including but not limited to partnerships
and other business entities; and 

 

$                  
Havens communicated on a regular basis with his
agent in Texas concerning the insurance policy, which is the crux of this
dispute.

 








At the hearing on the special
appearance, Allen testified that Havens had called her husband Fred Allen
numerous times at their house in Arlington, that Havens and Fred Allen were
business partners, that Havens sent faxes to Fred Allen, and that Havens
sometimes came to the area and was present at the CreditWatch Texas
offices.  And exhibit C, the only one of
Allen=s exhibits considered by the trial court, is a memo from
Havens to Fred Allen dated after the relationship between Fred Allen and
CreditWatch had been severed.  The memo
sets forth the future dealings between the parties, including details on having
Allen order business cards with his new title of AManaging Director
of January Partnership, Ltd.@ and on using a
Columbus, Ohio address as well as Allen=s address and
phone number in Dallas.

E.     Analysis of Evidence
Properly Before Trial Court













An analysis of the above
evidence establishes that Havens negated all jurisdictional bases.  His affidavit established that in his
individual capacity, he has had no contacts with TexasChe is not a resident of Texas; he has not in his individual capacity
regularly engaged in any business or any business enterprise in Texas; he has
not in his individual capacity, directly or indirectly, through any agent or by
mail, telephone, telegraph, or any other means of communication, regularly
transacted business or contracted to supply services or goods in Texas or to
any Texas resident; he has not appointed a registered agent for service of
process nor has he obtained a certificate to do business in Texas in his
individual capacity; he does not maintain and has never maintained an office in
Texas; he has never owned or leased real or personal property in Texas; he does
not have an address or a phone number in Texas; he does not maintain and has
not maintained a bank account in Texas; he has not advertised in Texas; and he
has never brought a lawsuit in Texas. 
Although Allen attempted through the excluded exhibits, to show facts
demonstrating contacts by Havens with Texas, she was unable to do so, leaving
only her testimony concerning Havens=s limited contacts through CreditWatch, rather than in his individual
capacity, presenting only slight evidence of random, fortuitous, or attenuated
contacts.  See Burger King, 471
U.S. at 475, 105 S. Ct. at 2183.  In
light of Havens=s affidavit
and in light of the limited evidence produced by Allen of Havens=s contacts with Texas in any capacity, or relating to the torts that
she alleged, the trial court correctly concluded that it did not possess
specific or general jurisdiction over Havens in his individual capacity.  See, e.g., NCNB Tex. Nat=l Bank v. Anderson, 812 S.W.2d 441, 444-46
(Tex. App.CSan Antonio
1991, no writ) (op. on reh=g) (recognizing nonresident investor who had no registered agent in
Texas, no office in Texas, no employees in Texas, and no other contacts with
Texas in his individual capacity was not subject to personal jurisdiction in
Texas court); see also Niehaus v. Cedar Bridge, Inc., 208 S.W.3d 575, 581
(Tex. App.CAustin 2006,
no pet.) (recognizing that corporate officer in his individual capacity cannot
be said to have established minimum contacts with the forum based on the
activities of his corporation, absent other evidence, such as proof sufficient
to Apierce the corporate veil@); Varme v. GFTA Trendanalysen B.G.A. Herrdum GMBH & Co.,
No. 14-96-00350-CV, 2000 WL 702635, at *5 (Tex. App.CHouston [14th Dist.] June 1, 2000, no pet.) (op. on remand) (not
designated for publication) (holding, ABased on the record before this court, we cannot say that the trial
court=s findings, concerning GFTA=s lack of minimum contacts, are so contrary to the overwhelming weight
of the evidence as to be manifestly wrong.@).  The evidence before the trial court simply does not establish that the
federal due process minimum contacts requirement was satisfied here.  See BMC Software, 83 S.W.3d at
795; TravelJungle, 212
S.W.3d at 846; Reata, 111 S.W.3d at 645. 
We therefore hold as a matter of law that, based
on the record before it, the trial court did not err by concluding that Havens
is not subject to personal jurisdiction in Texas.

We overrule Allen=s first issue.

 

 

 

 

 








VI.  Conclusion

Having overruled Havens=s cross issue and having
overruled both of Allen=s
issues, we affirm the trial court=s judgment granting Havens=s
special appearance.  

 

 

SUE WALKER

JUSTICE

 

PANEL A:   HOLMAN, GARDNER, and WALKER, JJ.

 

DELIVERED: 
March 15, 2007











[1]See Tex.
R. App. P. 47.4.





[2]We thus consider exhibit C as
properly admitted.





[3]Recall that after the trial court
entered the interlocutory order granting Havens=s special appearance, Allen=s case below continued against the
other parties that she had sued.





[4]The
reporter=s
record from the August 18, 2005 hearing on Allen=s
motion to disqualify counsel was filed in this appeal.  The parties subsequently agreed to transfer
the August 18, 2005 reporter=s record to another appeal
that is pending before this court under a separate cause number.