COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-318-CV

JUDY ALLEN, INDEPENDENT APPELLANT

ADMINISTRATRIX OF THE 

ESTATE OF MARVIN FRED 

ALLEN, AND INDIVIDUALLY, 

AS THE SURVIVING SPOUSE 

V.

JOHN F. HAVENS APPELLEE

------------

FROM PROBATE COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In this interlocutory appeal, Appellant Judy Allen, independent administratrix of the estate of Marvin Fred Allen (“Fred Allen”), and individually, as the surviving spouse, challenges the trial court’s order granting the special appearance of Appellee John F. Havens.  Before we address the merits of the trial court’s special appearance ruling, we must address two preliminary issues raised by the parties.  First, we must address whether Allen timely perfected her appeal; Havens claims that she did not.  Second, we must determine exactly what evidence the trial court considered in granting Havens’s special appearance.  For the reasons discussed below, we hold that Allen’s appeal is timely and that the trial court properly did not consider Allen’s exhibits A, B, and D through M at the special appearance hearing.  Concerning the merits of the trial court’s ruling granting Havens’s special appearance, we affirm.

II.  Factual and Procedural Background
  

At issue in the underlying case is the payment of the proceeds of a $1,000,000 life insurance policy on the life of Fred Allen, who is now deceased.  The insurance company paid the proceeds to CreditWatch, a group of entities owned by Havens, instead of to Fred Allen’s estate as Judy Allen contends should have occurred.

Allen sued Havens in his individual capacity, as well as other people and entities, asserting that “through his agents,” Havens committed fraud, tortious interference with an inheritance, and conspiracy.  Havens entered a rule 120(a) special appearance, arguing that because he resides in Florida and does not have sufficient Texas contacts, Texas courts have no jurisdiction over him individually.  On June 7, 2005, after holding a hearing on the special appearance, the probate court granted Havens’s motion and signed an order dismissing for want of personal jurisdiction
 the claims asserted against Havens individually.  On September 1, 2005, Allen perfected this appeal.  

III.  Timeliness of Allen’s Notice of Appeal

In a single cross issue, Havens contends that Allen failed to timely perfect this interlocutory appeal because she failed to file a notice of appeal within twenty days after the trial court signed the order granting Havens’s special appearance and because she failed to comply with the requisites set forth in rule 306a(4) and (5).  
See
 
Tex. R. Civ. P.
 306a(4), (5).

Allen filed her notice of appeal on September 1, 2005.  Five days later, on September 6, 2005, Allen filed a sworn motion to establish the applicability of rule 306a(4) and (5).  The motion alleged that Allen did not receive actual notice of the trial court’s order granting Havens’s special appearance and dismissing the suit against Havens until August 19, 2005—more than twenty days after the trial court signed the order—so that under rule 306a(4), the time period for filing a notice of appeal began to run on that date.  On January 9, 2006, pursuant to rule 306a(4) and (5), the trial court made a specific finding that August 18, 2005 was the date on which Allen received notice and actual knowledge of the order granting Havens’s special appearance.  Because Allen’s notice of appeal was filed on September 1
, a date within twenty days of the August 18, 2005 date-of-actual-knowledge, her notice of appeal was timely filed.  
See 
Tex. R. Civ. P.
 306a(4) (providing that when notice of a judgment or order is not received until between twenty and ninety days after it is signed, filing deadlines begin to run on date notice or actual knowledge is acquired); 
Tex. R. App. P
. 26.1 (requiring notice of appeal to be filed within twenty days of the date on which the order or judgment being appealed is signed).

But Havens argues that 

[a]fter a hearing on the party’s sworn [rule 306a] motion, the trial court must sign a written order that finds the date when the party or the party’s attorney received notice or acquired actual knowledge of the signed order, and the trial court must enter the order within the trial court’s ‘re-invoked’ plenary jurisdiction.

Havens argues that after the trial court’s plenary power expires, the trial court lacks jurisdiction to enter an order determining the date on which notice or actual knowledge was received.  Consequently, Havens contends that Allen was required to obtain an order from the trial court on her rule 306a motion within the trial court’s “re-invoked plenary power,” that is—in the absence of a timely filed postjudgment motion that would extend the appellate timetable—within thirty days of August 18
 or by September 17
.  Because the trial court did not enter an order until October 27
, Havens contends that the trial court lacked jurisdiction to determine a date of actual notice under rule 306a(5) and that Allen’s notice of appeal remained due within thirty days of the June 7, 2005 order granting Havens’s special appearance and dismissing Allen’s suit against him.

We recognize that some confusion exists on the issue of a trial court’s “re-invoked” plenary jurisdiction following a final judgment when a rule 306a motion is filed.  
See, e.g., In re Lynd Co.
, 195 S.W.3d 682, 685-87 (Tex. 2006); 
John v. Marshall Health Servs., Inc.
, 58 S.W.3d 738, 740-42 (Tex. 2001); 
Moore Landrey, L.L.P. v. Hirsch & Westheimer, P.C.
, 126 S.W.3d 536, 539-43 (Tex. App.—Houston [1st
 Dist.] 2003, no pet.).  The trial court’s plenary power in this case, however, is not an issue because this is an 
interlocutory
 appeal.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 51.014(a)(7) (Vernon Supp. 2006).  A trial court retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered.  
See, e.g., Fruehauf Corp. v. Carrillo
, 848 S.W.2d 83, 84 (Tex. 1993).  When the trial court entered the order dismissing Allen’s claims against Havens, when Allen filed her rule 306a motion, and when the trial court made its rule 306a(5) finding, Allen’s claims against other defendants remained pending in the trial court; no severance order had been entered.  
Thus, the trial court here possessed 
primary jurisdiction 
over Allen’s suit at the time it entered its 306a(5) finding of a date of notice or actual knowledge; because no judgment had been entered and the cause was still pending in the trial court, the trial court was not acting within any period of plenary jurisdiction.  Accordingly, we hold that Allen timely perfected her appeal by filing her notice of appeal on September 1, 2005, a date that is within twenty days of the date on which the trial court determined that she received notice of the June 7, 2005 order granting Havens’s special appearance and dismissing her claims against him.  We overrule Havens’s cross issue.

IV.  Evidence Considered By Trial Court In Granting Special Appearance

The next issue we must address is exactly what evidence the trial court considered in granting Havens’s special appearance.  At the special appearance hearing, Allen offered exhibits A through M as evidence for the trial court’s consideration.  These exhibits consist of documents that Allen found in her husband’s personal files at their home.  The documents appear to relate to CreditWatch—a group of Texas entities owned by Havens—but do not mention the life insurance policy or payment of its proceeds that are in dispute in the underlying case.

The parties take polar opposite positions on the issue of whether the trial court admitted and considered exhibits A, B, and D through M.  Allen asserts that she offered the exhibits into evidence as “business records of the estate of Marvin Fred Allen” and that she (Judy Allen) was the custodian of the records under Texas Probate Code section 233 and Texas Rules of Evidence 803 and 902.  
See
 
Tex. Prob. Code Ann.
 § 233 (Vernon 2003); 
see also 
Tex. R. Evid.
 803, 902.  Allen claims that, although Havens objected to the exhibits as she offered them, the trial court took the admissibility of the exhibits under advisement and ultimately never ruled on Havens’s objections so that, according to Allen, Havens’s objections to the exhibits were waived.  Havens, on the other hand, claims that the exhibits are records of CreditWatch, that Allen is not a proper custodian of the records of CreditWatch, and that the exhibits constituted inadmissible hearsay because Allen testified that she had no personal knowledge of the records and could not testify that the documents were kept in the course of CreditWatch’s regularly conducted business activity or that it was CreditWatch’s regular practice to make these records.  Consequently, Havens claims that the trial court properly excluded and did not consider exhibits A, B, and D through M when it made its special appearance ruling.

The record reveals that Allen offered exhibits A through M into evidence during her own testimony at the special appearance hearing.  Havens objected to each exhibit, except exhibit C,
(footnote: 2) and that the trial court overruled Havens’s objections to some exhibits and sustained his objections to other exhibits.  But then, about two-thirds of the way through the hearing, the trial court stated on the record that it was backtracking and, beginning with exhibit A, was taking the admissibility of all of the exhibits under advisement.  The trial court then asked Allen to lay a predicate for each of the exhibits and heard objections from Havens.  During this time, the trial court admitted exhibits J and M.  At the conclusion of the special appearance hearing, however, the trial court reiterated that it was “going to take this all under advisement” and asked the parties to submit post-hearing briefs on the application of the business records hearsay exception.  The parties filed post-hearing briefs, and the trial court subsequently granted Havens’s special appearance; the order did not contain a ruling on the admissibility of Allen’s exhibits.

Havens claims that in granting the special appearance, the trial court did not consider Allen’s exhibits.  Havens points to a ruling that the trial court made at a subsequent hearing on Allen’s motion to disqualify counsel for Havens.
(footnote: 3)  Allen attempted at that hearing to admit the business records of another corporation Fred Allen had worked with on the basis that she was the custodian of the records because she was the independent administratrix of Fred Allen’s estate.  The trial court stated, 

I think this is the same thing we rehashed earlier with whether or not the personal representative of an estate who inherits, so to speak, her husband’s records, then becomes the custodian of those records for purposes of rules of evidence.  And I believe I ruled against that earlier. 

Allen’s counsel reminded the trial court that it had “never ruled on that.”  The trial court stated, “Well, I can rule on this now but I do not think that this exception fits an affidavit and these attachments that occurred – and things that have occurred long before she became either our administratrix or the alleged owner of these companies.”  Thus, the record before us establishes that the trial court ultimately sustained Havens’s hearsay objections to exhibits A, B, and D through M and did not consider these exhibits in granting Havens’s special appearance.
(footnote: 4)  
Accord Ballard v. King
, 652 S.W.2d 767, 769 (Tex. 1983) (examining all subsequent hearings for ruling on motion to quash); 
In re Gonzalez
, 993 S.W.2d 147, 154 (Tex. App.—San Antonio 1999, no pet.) (examining trial court’s comments at subsequent hearing to clarify ruling made at prior hearing).

To the extent that Allen’s issue challenges the propriety of a trial court ruling excluding exhibits A, B, and D through M, we review the record to determine whether Allen established that the exhibits fall within the business records hearsay exception.  
See
 
Tex. R. Evid.
 902(10).  The business records hearsay exception provides that

[a]ny record or set of records or photographically reproduced copies of such records, which would be admissible under Rule 803(6) or (7) shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) or (7), that such records attached to such affidavit were in fact so kept as required by Rule 803(6) or (7), provided further, that such record or records along with such affidavit are filed with the clerk . . . .

Id.
  Texas Rule of Evidence 803(6) allows the records of regularly conducted activity to be admitted into evidence if the records are made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the record, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with rule 902(10).  
Tex. R. Evid.
 803(6).

As discussed above, during the special appearance hearing, Allen, as administratrix of the estate of Fred Allen, tried to introduce into evidence the documents that she found among her deceased husband’s effects.  But as Allen offered the exhibits into evidence—with the exception of exhibit C—Havens repeatedly took Allen on voir dire and elicited testimony establishing that Allen was not the “custodian” of the records and was not an “other qualified witness” because she lacked personal knowledge of the documents and their contents; she simply found them in her late husband’s files.  Consequently, the record demonstrates that Allen was unable to authenticate exhibits A through M, excluding exhibit C.  Thus, the trial court properly excluded the exhibits, which were business records of CreditWatch, because they were not authenticated by Allen merely by virtue of her role as administratrix.  
See generally
 
Tex. R. Evid.
 803(6), 902(10).  
Contra Drew v. Am. Auto. Ins. Co.
, 207 S.W. 547, 548 (Tex. Civ. App.—Fort Worth 1918, no writ) (deeming administratrix as custodian of 
estate’s
 records, including decedent’s automobile insurance policy, for use in wrongful death lawsuit).  We overrule Allen’s second issue.

V.  Trial Court Properly Granted Special Appearance Based 

on Lack of Personal Jurisdiction

Having held that the trial court properly excluded the exhibits that Allen tendered, except exhibit C, we may now review the evidence that the trial court properly had before it in determining whether it had personal jurisdiction over Havens.

A. Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law.  
BMC Software Belg., N.V. v. Marchand
, 83 S.W.3d 789, 793 (Tex. 2002); 
TravelJungle v. Am. Airlines, Inc.
, 212 S.W.3d 841, 845 (Tex. App.—Fort Worth 2006, no pet.); 
SITQ, E.U., Inc. v. Reata Rests., Inc.
, 111 S.W.3d 638, 644 (Tex. App.—Fort Worth 2003, pet. denied).  The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute.  
BMC Software
, 83 S.W.3d at 793; 
TravelJungle
, 212 S.W.3d at 845; 
Reata
, 111 S.W.3d at 644.  A nonresident defendant challenging a Texas court’s personal jurisdiction over it must negate all jurisdictional bases.  
BMC Software
, 83 S.W.3d at 793; 
TravelJungle
, 212 S.W.3d at 845
; 
Reata
, 111 S.W.3d at 644.  We review all of the evidence in making this determination.  
TravelJungle
, 212 S.W.3d at 845
; 
Reata
, 111 S.W.3d at 645; 
Michel v. Rocket Eng’g Corp.
, 45 S.W.3d 658, 667 (Tex. App.—Fort Worth 2001, no pet.).

When, as here, there are no findings of fact and conclusions of law, the trial court’s order implies all facts found in the evidence necessary to support the order.  
BMC Software
, 83 S.W.3d at 794; 
TravelJungle
, 212 S.W.3d at 845
; 
Reata
, 111 S.W.3d at 645.  
Because
 here the appellate record includes both the reporter’s and clerk’s records, however, these implied findings are not conclusive.  
BMC Software
, 83 S.W.3d at 795;
 
TravelJungle
, 212 S.W.3d at 845
; 
Reata
, 111 S.W.3d at 645.  We may review the trial court’s resolution of disputed fact issues for legal and factual sufficiency under the same standards of review that we apply in reviewing a jury’s or trial court’s findings of fact at trial. 
 
TravelJungle
, 212 S.W.3d at 845
; 
Michel
, 45 S.W.3d at 668.

B. Personal Jurisdiction

A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of the Texas long-arm statute and due process under the Fourteenth Amendment 
are satisfied.  
U.S. Const.
 amend. XIV, § 1; 
Tex. Civ. Prac. & Rem. Code Ann. 
§§ 17.041-.045 (Vernon 1997 & Supp. 2006); 
Helicopteros Nacionales de Colombia, S.A. v. Hall
, 466 U.S. 408, 413-14, 104 S. Ct. 1868, 1871-72 (1984); 
CSR Ltd. v. Link
, 925 S.W.2d 591, 594 (Tex. 1996) (orig. proceeding); 
TravelJungle
, 212 S.W.3d at 845
; 
Michel
, 45 S.W.3d at 668.

The Texas long-arm statute 
permits Texas courts to exercise jurisdiction over a nonresident defendant who “does business” in Texas.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 17.042; 
BMC Software
, 83 S.W.3d at 795; 
TravelJungle
, 212 S.W.3d at 845
; 
Reata
, 111 S.W.3d at 645.  The statute lists some activities that constitute “doing business,” including the commission of a tort, in whole or in part.  
Tex. Civ. Prac. & Rem. Code Ann. 
§ 17.042; 
TravelJungle
, 212 S.W.3d at 845
; 
Reata
, 111 S.W.3d at 645.  The list of activities set forth in section 17.042 is not exclusive, however.  
BMC Software
, 83 S.W.3d at 795;
 
TravelJungle
,
 
212 S.W.3d at 845
.  Section 17.042’
s broad language extends Texas courts’ personal jurisdiction only “as far as the federal constitutional requirements of due process will permit.”  
BMC Software
, 83 S.W.3d at 795
 (quoting 
U-Anchor Adver., Inc., N.H. v. Burt
, 553 S.W.2d 760, 762 (Tex. 1977), 
cert. denied
, 434 U.S. 1063 (1978)); 
TravelJungle
, 212 S.W.3d at 845
; 
Reata
, 111 S.W.3d at 645.

Due process is satisfied when (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.  
Int’l Shoe Co. v. Washington
, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); 
BMC Software
, 83 S.W.3d at 795; 
TravelJungle
, 212 S.W.3d at 846
; Reata
, 111 S.W.3d at 645.

A nonresident defendant who has “purposefully availed” itself of the privileges and benefits of conducting business in a foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction on a court in that forum.  
Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 474-76, 105 S. Ct. 2174, 2183 (1985); 
BMC Software
, 83 S.W.3d at 795;
 TravelJungle
, 212 S.W.3d at 846
.

Three factors are important in determining whether a defendant has purposefully availed itself of the forum:  first, only the defendant’s contacts with the forum count; second, the acts relied on must be purposeful rather than merely fortuitous; and, third, the defendant must seek some benefit, advantage, or profit by availing itself of the forum.  
Michiana Easy Livin’ Country, Inc. v. Holten
, 168 S.W.3d 777, 785 (Tex. 2005)
; 
Karstetter v. Voss
, 184 S.W.3d 396, 403 (Tex. App.—Dallas 2006, no pet.); 
TravelJungle
, 
212 S.W.3d at 846
.

Personal jurisdiction exists if the nonresident defendant’s minimum contacts give rise to either specific jurisdiction or general jurisdiction.  
Helicopteros Nacionales de Colombia
, 466 U.S. at 413-14, 104 S. Ct. at 1872; 
BMC Software
, 83 S.W.3d at 795; 
TravelJungle
, 212 S.W.3d at 846
; Reata
, 111 S.W.3d at 646.  A trial court has general jurisdiction over a nonresident defendant when that defendant’s contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state.  
BMC Software
, 83 S.W.3d at 796; 
TravelJungle
, 212 S.W.3d at 846
;
 Reata
, 111 S.W.3d at 646.  In contrast, specific jurisdiction is present if the nonresident defendant’s alleged liability arises from or is related to an activity conducted within the forum.  
BMC Software
, 83 S.W.3d at 796; 
TravelJungle
, 212 S.W.3d at 846
-47;
 Reata
, 111 S.W.3d at 646.  When a plaintiff asserts that a trial court has specific jurisdiction over a nonresident defendant, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation.  
Guardian Royal
 
Exch. Assurance, Ltd. v. English China Clays, P.L.C.
, 815 S.W.2d 223, 227-28 (Tex. 1991); 
TravelJungle
, 212 S.W.3d at 847
;
 
Reata
, 111 S.W.3d at 646.

C. Allen’s Allegations of Personal Jurisdiction

To begin our review of the evidence, we look to the pleadings.  In her second amended original petition, Allen stated that Havens is an individual who resides in Naples, Florida, and who may be served through the Secretary of State.  However, Allen stated that the trial court had jurisdiction because the probate of her husband’s estate was established in the trial court and because the defendants “either reside or conduct business in Tarrant County, Texas.”  Allen asserted a cause of action for fraud against Havens, alleging that Havens “committed both actual and/or constructive fraud as it relates to the right of [Allen] to the proceeds of [the key man insurance policy].”  Specifically, Allen stated that Havens controlled the CreditWatch entities and, “in all likelihood, 

. . . ‘pocketed’ the $1-million-dollar-plus check issued by United of Omaha Life Insurance Company.”  Allen also asserted causes of action against Havens for tortious interference with an inheritance, conspiracy to commit fraud, and conspiracy to tortiously interfere with inheritance.  Thus, Allen asserts that Texas has specific jurisdiction over Havens, and she has pleaded a sufficient jurisdictional basis to require Havens to negate this basis of jurisdiction. 
 
BMC Software
, 83 S.W.3d at 793.

On appeal, Allen likewise claims that Havens is subject to jurisdiction in Texas because the causes of action that she asserts against him are torts for which he may be held individually liable.  Allegations that a tort was committed in Texas satisfy the long-arm statute but not due process concerns.  
Michiana
, 168 S.W.3d at 788.  Thus, the proper analysis focuses on whether Havens met his burden to negate Allen’s allegations that his activities satisfy the minimum contacts requirement of due process.

D. Evidence Offered by the Parties Regarding Havens’s Special Appearance

In his special appearance, Havens set forth facts demonstrating a lack of contacts with Texas.  Havens’s affidavit explains that he is a resident of the State of Florida, that he does not have sufficient minimum contacts with the State of Texas to justify the trial court’s imposition of jurisdiction over him, and that he has not, in his individual capacity, committed any acts nor consummated any transactions as alleged by Allen to constitute the requisite contact with Texas.  Specifically, Havens’s affidavit alleges
:

that he has not in his individual capacity regularly engaged in any business or business enterprise in Texas, nor has he, in his individual capacity, directly or indirectly, through any agent or by mail, telephone, telegraph, or any other means of communication, regularly transacted business or contracted to supply services or goods in Texas or to any Texas resident;

that he has not appointed a registered agent for service of process nor has he obtained a certificate to do business in Texas in his individual capacity;

that he does not maintain and has never maintained an office in the State of Texas;

that he has never owned real or personal property located within Texas and has never leased any real or personal property in Texas;

that he does not have an address in the State of Texas and does not maintain a telephone number within the State of Texas;

that he does not maintain and has not maintained a bank account in the State of Texas;

that he has not advertised in the State of Texas; and

that he has never brought a lawsuit in the State of Texas. 

Allen responded, arguing that the trial court had specific jurisdiction over Havens in regard to the life insurance proceeds dispute.  Allen contends that the following acts give rise to the trial court’s specific jurisdiction over Havens:

Havens may well have personally pocketed the proceeds in dispute;

The dispute is between the “CreditWatch” entities (which Havens was and is in control of and which are Texas entities) and Allen’s widow, who is a Texas resident;

In connection with his activities at “CreditWatch,” Havens communicated by faxes, telephone conversations, emails, and letters to Allen on a regular basis in Texas;

Havens came to Texas on “CreditWatch” business;

Havens profited from his Texas ties and owned interest in several Texas entities, including but not limited to partnerships and other business entities; and 

Havens communicated on a regular basis with his agent in Texas concerning the insurance policy, which is the crux of this dispute.

At the hearing on the special appearance, Allen testified that Havens had called her husband Fred Allen numerous times at their house in Arlington, that Havens and Fred Allen were business partners, that Havens sent faxes to Fred Allen, and that Havens sometimes came to the area and was present at the CreditWatch Texas offices.  And exhibit C, the only one of Allen’s exhibits considered by the trial court, 
is a memo from Havens to Fred Allen dated after the relationship between Fred Allen and CreditWatch had been severed.  The memo sets forth the future dealings between the parties, including details on having Allen order business cards with his new title of “Managing Director of January Partnership, Ltd.” and on using a Columbus, Ohio address as well as Allen’s address and phone number in Dallas.

E. Analysis of Evidence Properly Before Trial Court

An analysis of the above evidence establishes that Havens negated all jurisdictional bases.  His affidavit established that in his individual capacity, he has had no contacts with Texas—he is not a resident of Texas; he has not in his individual capacity regularly engaged in any business or any business enterprise in Texas; he has not in his individual capacity, directly or indirectly, through any agent or by mail, telephone, telegraph, or any other means of communication, regularly transacted business or contracted to supply services or goods in Texas or to any Texas resident
; he has not appointed a registered agent for service of process nor has he obtained a certificate to do business in Texas in his individual capacity; he does not maintain and has never maintained an office in Texas; he has never owned or leased real or personal property in Texas; he does not have an address or a phone number in Texas; he does not maintain and has not maintained a bank account in Texas; he has not advertised in Texas; and he has never brought a lawsuit in Texas.  Although Allen attempted through the excluded exhibits, 
to show facts demonstrating contacts by Havens with Texas, she was unable to do so, leaving only her testimony concerning Havens’s limited contacts through CreditWatch, rather than in his individual capacity, presenting only slight evidence of random, fortuitous, or attenuated contacts.  
See Burger King
, 471 U.S. at 475, 105 S. Ct. at 2183.  In light of Havens’s affidavit and in light of the limited evidence produced by Allen of Havens’s contacts with Texas in any capacity, or relating to the torts that she alleged, the trial court correctly concluded that it did not possess specific or general jurisdiction over Havens in his individual capacity.  
See, e.g., NCNB Tex. Nat’l Bank v. Anderson
, 812 S.W.2d 441, 444-46 (Tex. App.—San Antonio 1991, no writ) (op. on reh’g) (recognizing nonresident investor who had no registered agent in Texas, no office in Texas, no employees in Texas, and no other contacts with Texas in his individual capacity was not subject to personal jurisdiction in Texas court); 
see also Niehaus v. Cedar Bridge, Inc.,
 208 S.W.3d 575, 581 (Tex. App.—Austin 2006, no pet.) (recognizing that corporate officer in his individual capacity cannot be said to have established minimum contacts with the forum based on the activities of his corporation, absent other evidence, such as proof sufficient to “pierce the corporate veil”); 
Varme v. GFTA Trendanalysen B.G.A. Herrdum GMBH & Co.
, No. 14-96-00350-CV, 2000 WL 702635, at *5 (Tex. App.—Houston [14th Dist.] June 1, 2000, no pet.) (op. on remand) (not designated for publication) (holding, “Based on the record before this court, we cannot say that the trial court’s findings, concerning GFTA’s lack of minimum contacts, are so contrary to the overwhelming weight of the evidence as to be manifestly wrong.”).  
The evidence before the trial court simply does not establish that the federal due process minimum contacts requirement was satisfied here.  
See
 
BMC Software
, 83 S.W.3d at 795; 
TravelJungle
, 212 S.W.3d at 846
; Reata
, 111 S.W.3d at 645.  
We therefore hold as a matter of law that, based on the record before it, the trial court did not err by concluding that Havens is not subject to personal jurisdiction in Texas.

We overrule Allen’s first issue.

VI.  Conclusion

Having overruled Havens’s cross issue and having overruled both of Allen’s issues, we affirm the trial court’s judgment granting Havens’s special appearance.
 

SUE WALKER

JUSTICE

PANEL A: HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED:
  March 15, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
We thus consider exhibit C as properly admitted.

3:
Recall that after the trial court entered the interlocutory order granting Havens’s special appearance, Allen’s case below continued against the other parties that she had sued.

4:
The reporter’s record from the August 18, 2005 hearing on Allen’s motion to disqualify counsel was filed in this appeal.  The parties subsequently agreed to transfer the August 18, 2005 reporter’s record to another appeal that is pending before this court under a separate cause number.